COOPER ET AL. *v.* FEDERAL RESERVE BANK
OF RICHMOND

No. 83–185.   Argued March 19, 1984—Decided June 25, 1984

*Eric Schnapper* argued the cause for petitioners. With him on the briefs were *John T. Nockleby, Jack Greenberg, O. Peter Sherwood,* and *Charles Stephen Ralston.*

*Harriet S. Shapiro* argued the cause for the United States et al. as *amici curiae* urging reversal. With her on the brief were *Solicitor General Lee, Deputy Solicitor General Wallace, Philip B. Sklover,* and *Vella M. Fink.*

*George R. Hodges* argued the cause and filed a brief for respondent.*

JUSTICE STEVENS delivered the opinion of the Court.

The question to be decided is whether a judgment in a class action determining that an employer did not engage in a general pattern or practice of racial discrimination against the certified class of employees precludes a class member from maintaining a subsequent civil action alleging an individual claim of racial discrimination against the employer.

I

On March 22, 1977, the Equal Employment Opportunity Commission commenced a civil action against respondent, the Federal Reserve Bank of Richmond.[1] Respondent operates a branch in Charlotte, N.. C. (the Bank), where during the years 1974–1978 it employed about 350–450 employees in several departments. The EEOC complaint alleged that the Bank was violating § 703(a) of Title VII of the Civil Rights Act of 1964 by engaging in "policies and practices" that included "failing and refusing to promote *blacks* because of race." App. 9a.

Six months after the EEOC filed its complaint, four individual employees[2] were allowed to intervene as plaintiffs. In

---

*Briefs of *amici curiae* urging affirmance were filed for Boeing Co. by *Jerome A. Hoffman, John M. Coleman,* and *Michael C. Hallerud;* and for the Equal Employment Advisory Council by *Robert E. Williams, Douglas S. McDowell,* and *Stephen C. Yohay.*

[1] The Bank is organized pursuant to a federal statute, 12 U. S. C. § 341, that enables it to sue and be sued, to appoint its own employees, and to define their duties.

[2] Sylvia Cooper, Constance Russell, Helen Moore, and Elmore Hannah, Jr., sometimes referred to by the District Court as the "intervening plain-

their "complaint in intervention," these plaintiffs alleged that the Bank's employment practices violated 42 U. S. C. § 1981, as well as Title VII; that each of them was the victim of employment discrimination based on race; and that they could adequately represent a class of black employees against whom the Bank had discriminated because of their race. In due course, the District Court entered an order conditionally certifying the following class pursuant to Federal Rules of Civil Procedure 23(b)(2) and (3):

> "All black persons who have been employed by the defendant at its Charlotte Branch Office at any time since January 3, 1974 [6 months prior to the first charge filed by the intervenors with EEOC], who have been discriminated against in promotion, wages, job assignments and terms and conditions of employment because of their race." [3]

After certifying the class, the District Court ordered that notice be published in the Charlotte newspapers and mailed to each individual member of the class. The notice described the status of the litigation, and plainly stated that members of the class "will be bound by the judgment or other determination" if they did not exclude themselves by sending a written notice to the Clerk. [4] Among the recipients of the

---

tiffs" and by the parties as the "Cooper petitioners." In our order granting certiorari, we declined to review two questions that were presented by these parties. 464 U. S. 932 (1983).

[3] App. to Pet. for Cert. 200a (brackets in original). Certification was also sought for a class of female employees, but the District Court concluded that the evidence did not warrant the certification of a class with respect to the claims of sex discrimination. *Id.*, at 200a, n. 1.

[4] The actual text of the critical paragraphs of the notice read as follows:

"3. The class of persons who are entitled to participate in this action as members of the class represented by the plaintiff-intervenors, for whom relief may be sought in this action by the plaintiff-intervenors and who will be bound by the determination in this action is defined to include: all black

notice were Phyllis Baxter and five other individuals employed by the Bank.[5]   It is undisputed that these individuals—the Baxter petitioners—are members of the class represented by the intervening plaintiffs and that they made no attempt to exclude themselves from the class.

At the trial the intervening plaintiffs, as well as the Baxter petitioners, testified.   The District Court found that the Bank had engaged in a pattern and practice of discrimination from 1974 through 1978 by failing to afford black employees opportunities for advancement and assignment equal to

persons who were employed by the Federal Reserve Bank of Richmond at its Charlotte Branch Office at any time since January 3, 1974.

"4. If you fit in the definition of the class in paragraph 3 you are a class member.   As a class member, you are entitled to pursue in this action any claim of racial discrimination in employment that you may have against the defendant.   You need to do nothing further at this time to remain a member of the class.   However, if you so desire, you may exclude yourself from the class by notifying the Clerk, United States District Court, as provided in paragraph 6 below.

"5. If you decide to remain in this action, you should be advised that: the court will include you in the class in this action unless you request to be excluded from the class in writing; the judgment in this case, whether favorable or unfavorable to the plaintiff and the plaintiff-intervenors, will include all members of the class; all class members will be bound by the judgment or other determination of this action; and if you do not request exclusion, you may appear at the hearings and trial of this action through the attorney of your choice.

"6. If you desire to exclude yourself from this action, you will not be bound by any judgment or other determination in this action and you will not be able to depend on this action to toll any statutes of limitations on any individual claims you may have against the defendant.   You may exclude yourself from this action by notifying the Clerk in writing that you do not desire to participate in this action.   The Clerk's address is: Clerk, United States District Court, Post Office Box 1266, Charlotte, North Carolina 28232."   App. 35a–37a.

[5] In addition to Baxter, they were Brenda Gilliam, Glenda Knott, Emma Ruffin, Alfred Harrison, and Sherri McCorkle.   All of these individuals, sometimes referred to as the "Baxter petitioners," stipulated that they received the notice.   See id., at 95a.

opportunities afforded white employees in pay grades 4 and 5. Except as so specified, however, the District Court found that "there does not appear to be a pattern and practice of discrimination pervasive enough for the court to order relief." App. to Pet. for Cert. 193a–194a. With respect to the claims of the four intervening plaintiffs, the court found that the Bank had discriminated against Cooper and Russell, but not against Moore and Hannah. Finally, the court somewhat cryptically stated that although it had an opinion about "the entitlement to relief of some of the class members who testified at trial," it would defer decision of such matters to a further proceeding. *Id.*, at 194a.

Thereafter, on March 24, 1981, the Baxter petitioners moved to intervene, alleging that each had been denied a promotion for discriminatory reasons. With respect to Emma Ruffin, the court denied the motion because she was a member of the class for which relief had been ordered and therefore her rights would be protected in the Stage II proceedings to be held on the question of relief. With respect to the other five Baxter petitioners, the court also denied the motion, but for a different reason. It held that because all of them were employed in jobs above the grade 5 category, they were not entitled to any benefit from the court's ruling with respect to discrimination in grades 4 and 5. The District Court stated: "The court has found no proof of any classwide discrimination above grade 5 and, therefore, they are not entitled to participate in any Stage II proceedings in this case." *Id.*, at 287a. The court added that it could "see no reason why, if any of the would be intervenors are actively interested in pursuing their claims, they cannot file a Section 1981 suit next week . . . ." *Id.*, at 288a.

A few days later the Baxter petitioners filed a separate action against the Bank alleging that each of them had been denied a promotion because of their race in violation of 42 U. S. C. § 1981. The Bank moved to dismiss the complaint on the ground that each of them was a member of the class

that had been certified in the Cooper litigation, that each was employed in a grade other than 4 or 5, and that they were bound by the determination that there was no proof of any classwide discrimination above grade 5. The District Court denied the motion to dismiss, but certified its order for interlocutory appeal under 28 U. S. C. § 1292(b). The Bank's interlocutory appeal from the order was then consolidated with the Bank's pending appeal in the Cooper litigation.

The United States Court of Appeals for the Fourth Circuit reversed the District Court's judgment on the merits in the Cooper litigation, concluding that (1) there was insufficient evidence to establish a pattern or practice of racial discrimination in grades 4 and 5, and (2) two of the intervening plaintiffs had not been discriminated against on account of race. *EEOC* v. *Federal Reserve Bank of Richmond,* 698 F. 2d 633 (1983). The court further held that under the doctrine of res judicata, the judgment in the Cooper class action precluded the Baxter petitioners from maintaining their individual race discrimination claims against the Bank. The court thus reversed the order denying the Bank's motion to dismiss in the Baxter action, and remanded for dismissal of the Baxter complaint. We granted certiorari to review that judgment, 464 U. S. 932 (1983),[6] and we now reverse.

## II

Claims of two types were adjudicated in the Cooper litigation. First, the individual claims of each of the four intervening plaintiffs have been finally decided in the Bank's favor.[7] Those individual decisions do not, of course, foreclose any other individual claims. Second, the class claim that the Bank followed "policies and practices" of discriminat-

---

[6] As noted, n. 2, *supra,* our limited grant of certiorari does not encompass the questions raised by the Cooper petitioners concerning the Court of Appeals' disposition of the merits of their case.

[7] Two of those claims were rejected by the District Court and two by the Court of Appeals; all four of those determinations are now equally final.

ing against its employees has also been decided.[8]   It is that decision on which the Court of Appeals based its res judicata analysis.

There is of course no dispute that under elementary principles of prior adjudication a judgment in a properly entertained class action is binding on class members in any subsequent litigation.   See, *e. g.*, *Supreme Tribe of Ben-Hur* v. *Cauble*, 255 U. S. 356 (1921); Restatement of Judgments § 86 (1942); Restatement (Second) of Judgments § 41(1)(e) (1982); see also Fed. Rule Civ. Proc. 23(c)(3); see generally Moore & Cohn, Federal Class Actions—Jurisdiction and Effect of Judgment, 32 Ill. L. Rev. 555 (1938).   Basic principles of res judicata (merger and bar or claim preclusion) and collateral estoppel (issue preclusion) apply.   A judgment in favor of the plaintiff class extinguishes their claim, which merges into the judgment granting relief.   A judgment in favor of the defendant extinguishes the claim, barring a subsequent action on that claim.   A judgment in favor of either side is conclusive in a subsequent action between them on any issue actually litigated and determined, if its determination was essential to that judgment.

## III

A plaintiff bringing a civil action for a violation of § 703(a) of Title VII of the Civil Rights Act of 1964, 78 Stat. 255, as amended, 42 U. S. C. § 2000e–2(a), has the initial burden of establishing a prima facie case that his employer discriminated against him on account of his race, color, religion, sex, or national origin.   A plaintiff meets this initial burden by offering evidence adequate to create an inference that he was denied an employment opportunity on the basis of a discriminatory criterion enumerated in Title VII.

---

[8] The District Court rejected all of the class claims except that pertaining to grades 4 and 5; the claim on behalf of that subclass was rejected by the Court of Appeals.   Again, that distinction between subclasses is no longer significant for the entire class claim has now been decided.

A plaintiff alleging one instance of discrimination establishes a prima facie case justifying an inference of individual racial discrimination by showing that he (1) belongs to a racial minority, (2) applied and was qualified for a vacant position the employer was attempting to fill, (3) was rejected for the position, and (4) after his rejection, the position remained open and the employer continued to seek applicants of the plaintiff's qualifications. *McDonnell Douglas Corp.* v. *Green,* 411 U. S. 792, 802 (1973). Once these facts are established, the employer must produce "evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." *Texas Dept. of Community Affairs* v. *Burdine,* 450 U. S. 248, 254 (1981). At that point, the presumption of discrimination "drops from the case," *id.,* at 255, n. 10, and the district court is in a position to decide the ultimate question in such a suit: whether the particular employment decision at issue was made on the basis of race. *United States Postal Service Board of Governors* v. *Aikens,* 460 U. S. 711, 714–715 (1983); *Texas Dept. of Community Affairs* v. *Burdine,* 450 U. S., at 253. The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff regarding the particular employment decision "remains at all times with the plaintiff," *ibid.,* and in the final analysis the trier of fact "must decide which party's explanation of the employer's motivation it believes." *United States Postal Service Board of Governors* v. *Aikens,* 460 U. S., at 716.

In *Franks* v. *Bowman Transportation Co,* 424 U. S. 747 (1976), the plaintiff, on behalf of himself and all others similarly situated, alleged that the employer had engaged in a pervasive pattern of racial discrimination in various company policies, including the hiring, transfer, and discharge of employees. In that class action we held that demonstrating the existence of a discriminatory pattern or practice established a presumption that the individual class members had been discriminated against on account of race. *Id.,* at 772. Proving

isolated or sporadic discriminatory acts by the employer is insufficient to establish a prima facie case of a pattern or practice of discrimination; rather it must be established by a preponderance of the evidence that "racial discrimination was the company's standard operating procedure—the regular rather than the unusual practice." *Teamsters* v. *United States*, 431 U. S. 324, 336 (1977) (footnote omitted).[9] While a finding of a pattern or practice of discrimination itself justifies an award of prospective relief to the class, additional proceedings are ordinarily required to determine the scope of individual relief for the members of the class. *Id.*, at 361.

The crucial difference between an individual's claim of discrimination and a class action alleging a general pattern or practice of discrimination is manifest. The inquiry regarding an individual's claim is the reason for a particular employment decision, while "at the liability stage of a pattern-or-practice trial the focus often will not be on individual hiring decisions, but on a pattern of discriminatory decisionmaking." *Id.*, at 360, n. 46. See generally *Furnco Construction Corp.* v. *Waters*, 438 U. S. 567, 575, n. 7 (1978).

This distinction was critical to our holding in *General Telephone Co. of Southwest* v. *Falcon*, 457 U. S. 147 (1982), that an individual employee's claim that he was denied a promotion on racial grounds did not necessarily make him an adequate representative of a class composed of persons who had allegedly been refused employment for discriminatory reasons. We explained:

> "Conceptually, there is a wide gap between (a) an individual's claim that he has been denied a promotion on discriminatory grounds, and his otherwise unsupported allegation that the company has a policy of discrimination, and (b) the existence of a class of persons who have

---

[9] Although *Teamsters* involved an action litigated on the merits by the Government as plaintiff under § 707(a) of the Act, it is plain that the elements of a prima facie pattern-or-practice case are the same in a private class action. See *Teamsters* v. *United States*, 431 U. S., at 358–360.

suffered the same injury as that individual, such that the individual's claim and the class claims will share common questions of law or fact and that the individual's claim will be typical of the class claims. For respondent to bridge that gap, he must prove much more than the validity of his own claim. Even though evidence that he was passed over for promotion when several less deserving whites were advanced may support the conclusion that respondent was denied the promotion because of his national origin, such evidence would not necessarily justify the additional inferences (1) that this discriminatory treatment is typical of petitioner's promotion practices, (2) that petitioner's promotion practices are motivated by a policy of ethnic discrimination that pervades petitioner's Irving division, or (3) that this policy of ethnic discrimination is reflected in petitioner's other employment practices, such as hiring, in the same way it is manifested in the promotion practices." *Id.*, at 157–158.

After analyzing the particulars of the plaintiff's claim in that case, we pointed out that if "one allegation of specific discriminatory treatment were sufficient to support an across-the-board attack, every Title VII case would be a potential companywide class action." *Id.*, at 159. We further observed:

"In this regard it is noteworthy that Title VII prohibits discriminatory employment *practices*, not an abstract policy of discrimination. The mere fact that an aggrieved private plaintiff is a member of an identifiable class of persons of the same race or national origin is insufficient to establish his standing to litigate on their behalf all possible claims of discrimination against a common employer." *Id.*, at 159, n. 15.

*Falcon* thus holds that the existence of a valid individual claim does not necessarily warrant the conclusion that the individual plaintiff may successfully maintain a class action. It

is equally clear that a class plaintiff's attempt to prove the existence of a companywide policy, or even a consistent practice within a given department, may fail even though discrimination against one or two individuals has been proved. The facts of this case illustrate the point.

The District Court found that two of the intervening plaintiffs, Cooper and Russell, had both established that they were the victims of racial discrimination but, as the Court of Appeals noted, they were employed in grades higher than grade 5 and therefore their testimony provided no support for the conclusion that there was a practice of discrimination in grades 4 and 5.[10] Given the burden of establishing a prima facie case of a pattern or practice of discrimination, it was entirely consistent for the District Court simultaneously to conclude that Cooper and Russell had valid individual claims even though it had expressly found no proof of any classwide discrimination above grade 5. It could not be more plain that the rejection of a claim of classwide discrimination does not warrant the conclusion that no member of the class could have a valid individual claim. "A racially balanced work force cannot immunize an employer from liability for specific acts of discrimination." *Furnco Construction Corp.* v. *Waters*, 438 U. S., at 579.

The analysis of the merits of the Cooper litigation by the Court of Appeals is entirely consistent with this conclusion. In essence, the Court of Appeals held that the statistical

---

[10] The Court of Appeals wrote:

"In denying the motion the District Court stated that all intervenors 'in grades higher than grade 5' were not members of the class in whose favor the District Court had found 'classwide discrimination.' By this test, Cooper, Moore, Russell, Baxter, Gilliam, Knott and McCorkle were not members of the class in which discrimination was found and their testimony could not have been included within the District Court's term 'oral testimony of class members,' complaining of promotion out of either pay grade 4 or pay grade 5; only the testimony of Ruffin and Harrison met that qualifying standard." *EEOC* v. *Federal Reserve Bank of Richmond*, 698 F. 2d 633, 644 (1983).

evidence, buttressed by expert testimony and anecdotal evidence by three individual employees in grades 4 and 5, was not sufficient to support the finding of a pattern of bankwide discrimination within those grades. It is true that the Court of Appeals was unpersuaded by the anecdotal evidence; it is equally clear, however, that it did not regard two or three instances of discrimination as sufficient to establish a general policy.[11] It quite properly recognized that a "court must be wary of a claim that the true color of a forest is better revealed by reptiles hidden in the weeds than by the foliage of

---

[11] It wrote:

"The claim here is a pattern or practice of intentional discrimination against an entire group by treating it less favorably because of race. That is the typical disparate treatment case. This case should accordingly be properly treated as such. However, the result reached by us would not be substantially different whether the class action be considered as a disparate impact or a disparate treatment case." *Id.*, at 639.

"This case accordingly presents quite a contrast with *Teamsters* where the 'oral testimony of class members' demonstrated 40 cases of specific instances of discrimination in support of the statistical evidence offered by plaintiffs or with that in our own case of *Chisholm* v. *United States Postal Service*, 665 F. 2d 482, 495 (4th Cir. 1981), where there were 20 'class members' testifying of individual discrimination. Here all we have is the testimony of but two class members testifying of individual discrimination in promotion out of either pay grade 4 or pay grade 5 on which a finding of discriminatory practices can be rested. This is even less of a presentation of oral testimony in support of a pattern of discrimination than that found wanting in *Ste. Marie* v. *Eastern R. Ass'n.*, 650 F. 2d 395, 405–06 (2d Cir. 1981), where the Court declared that the small number of incidents of discrimination in promotion over a period of years in that case 'would be insufficient to support the inference of a routine or regular practice of discrimination . . . ,' or, in *Goff* v. *Continental Oil Co.*, 678 F. 2d 593, 597 (5th Cir. 1982), where the Court held that 'even if all three witnesses' accounts of racial discrimination were true, this evidence would not have been enough to prove a pattern or practice of company-wide discrimination by Conoco.' It follows that these two incidents of failure to promote Ruffin or Harrison, even if regarded as discriminatory, (which we assume only *arguendo*), would not support the District Court's finding of a pattern of class discrimination in promotions out of grades 4 and 5." *Id.*, at 643–644 (footnotes omitted).

countless freestanding trees." *NAACP* v. *Claiborne Hard-ware Co.*, 458 U. S. 886, 934 (1982). Conversely, a piece of fruit may well be bruised without being rotten to the core.

The Court of Appeals was correct in generally concluding that the Baxter petitioners, as members of the class represented by the intervening plaintiffs in the Cooper litigation, are bound by the adverse judgment in that case. The court erred, however, in the preclusive effect it attached to that prior adjudication. That judgment (1) bars the class members from bringing another class action against the Bank alleging a pattern or practice of discrimination for the relevant time period and (2) precludes the class members in any other litigation with the Bank from relitigating the question whether the Bank engaged in a pattern and practice of discrimination against black employees during the relevant time period. The judgment is not, however, dispositive of the individual claims the Baxter petitioners have alleged in their separate action. Assuming they establish a prima facie case of discrimination under *McDonnell Douglas*, the Bank will be required to articulate a legitimate reason for each of the challenged decisions, and if it meets that burden, the ultimate questions regarding motivation in their individual cases will be resolved by the District Court. Moreover, the prior adjudication may well prove beneficial to the Bank in the Baxter action: the determination in the Cooper action that the Bank had not engaged in a general pattern or practice of discrimination would be relevant on the issue of pretext. See *McDonnell Douglas*, 411 U. S., at 804–805.

The Bank argues that permitting the Baxter petitioners to bring separate actions would frustrate the purposes of Rule 23. We think the converse is true. The class-action device was intended to establish a procedure for the adjudication of common questions of law or fact. If the Bank's theory were adopted, it would be tantamount to requiring that every member of the class be permitted to intervene to litigate the merits of his individual claim.

It is also suggested that the District Court had a duty to decide the merits of the individual claims of class members, at least insofar as the individual claimants became witnesses in the joint proceeding and subjected their individual employment histories to scrutiny at trial.[12]  Unless these claims are decided in the main proceeding, the Bank argues that the duplicative litigation that Rule 23 was designed to avoid will be encouraged, and that defendants will be subjected to the risks of liability without the offsetting benefit of a favorable termination of exposure through a final judgment.

This argument fails to differentiate between what the District Court might have done and what it actually did.  The District Court did actually adjudicate the individual claims of Cooper and the other intervening plaintiffs, as well as the class claims, but it pointedly refused to decide the individual claims of the Baxter petitioners.  Whether the issues framed by the named parties before the court should be expanded to encompass the individual claims of additional class members is a matter of judicial administration that should be decided in the first instance by the District Court.  Nothing in Rule 23 requires as a matter of law that the District Court make a finding with respect to each and every matter on which there is testimony in the class action.  Indeed, Rule 23 is carefully drafted to provide a mechanism for the expeditious decision of *common* questions.  Its purposes might well be defeated by an attempt to decide a host of individual claims before any common question relating to liability has been resolved adversely to the defendant.  We do not find the District Court's denial of the Baxter petitioners' motion for leave to intervene in the Cooper litigation, or its decision not to make findings regarding the Baxter petitioners' testimony in the Cooper litigation, to be inconsistent with Rule 23.

---

[12] We find the Bank's contention that the District Court actually found against the Baxter petitioners on the basis of the testimony in the Cooper action wholly without merit.

The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE MARSHALL concurs in the judgment.

JUSTICE POWELL took no part in the decision of this case.