**Frances KEETON, et al., Plaintiffs,**

v.

**HAYES INTERNATIONAL CORPORATION, et al., Defendants.**

**No. CV 82-P-2293-S.**

United States District Court, N.D. Alabama, S.D.

March 21, 1985.

Robert L. Wiggins, Jr., Robert F. Childs, Jr., Birmingham, Ala., for plaintiffs.

Patrick Nakamura, Robert H. Stropp, Jr., William F. Gardner, Thomas Crawford, Birmingham, Ala., for CWA–Jefferson County Carpenters Dist. Council.

John L. Quinn, C.W.A., John C. Falkenberry, Stewart Falkenberry & Whatley, Birmingham, Ala., Marley S. Weiss, Assoc. Gen. Counsel, Detroit, Mich., for Internat'l Union, UAAAIWA, Local 1155 and Internat'l Assoc. of Machinists and Aerospace Workers No. 271.

### Memorandum of Opinion

POINTER, Chief Judge.

Plaintiffs' Motion for Class Certification was taken under submission by this court on the parties' briefs, stipulations and affidavits in lieu of an evidentiary hearing. The named plaintiffs in this Title VII and Equal Pay Act action—Frances Keeton, a current Hayes employee, and Annette Stansell, a discharged Hayes employee—seek certification of a class of

> all female employees at Hayes (Hayes International Corporation, Birmingham Airport Facility) who, since October 15,

1975,[1] have: (1) been treated discriminatorily in their initial placements; (2) been discriminated against in denial of promotional or transfer opportunities (including female employees rejected for transfer or promotion, female employees disqualified after transfer or promotion or during the training period on their new job, and female employees discouraged from seeking transfer or promotion); (3) been discriminatorily denied equal pay; and (4) been subjected to terms and conditions of employment which are dissimilar to that afforded male employees.

The parties are sharply divided as to the appropriateness of certifying the class proposed by the plaintiffs. An understanding of the arguments advanced by each side requires some knowledge of Hayes' internal structure and operations.

The Hayes facility located at the Birmingham airport is engaged primarily in repairing and maintaining military aircraft. Much of its work is done under government contract. Consequently, the quantity of work at the facility is subject to significant fluctuation, and reductions in the work force (RIFs) are not uncommon.

Hayes is comprised of five bargaining units, each of which is represented by a different union. Employees in the production and maintenance bargaining unit are represented by the United Automobile, Aerospace and Agricultural Implement Workers of America (UAW); most of the clerical and technical personnel are represented by the Communication Workers of America (CWA); firefighters and guards comprise the plant protection unit, which is represented by the Association of Plant Police; carpenters and cabinet makers are represented by the Jefferson County and vicinity Carpenters District Council; and maintenance mechanics are represented by the International Association of Machinists and Aerospace Workers (IAM). Although all five unions are joined as defendants, plaintiffs' Motion for Class Certification is concerned chiefly with the UAW and the CWA unions at Hayes.

The UAW has had a collective bargaining agreement in effect at Hayes since 1952. Production and maintenance employees represented by the union are divided into nine seniority divisions. Each seniority division contains a variety of similar jobs—e.g., electrical (seniority division 1), mechanical (seniority division 2). The seniority divisions are not organized in a pyramidal design; instead most contain a number of independent or interlocking lines of progressions (LOPs) that do not form a common apex. Generally, when a worker is promoted she moves to the next highest job in her LOP. Movement between LOPs within a seniority division is restricted to essentially the same methods of transfer that apply to transfers between seniority divisions.

Although as a general rule a Hayes employee cannot transfer from one UAW seniority division to another without loss of seniority, three methods of transfer do exist which permit a carryover of seniority. The first of these methods, authorized by Section 17(a) of Article IV of the UAW contract, requires that the prospective transferee satisfy the company that she possesses the qualifications (set out in the UAW contract) for a job to which she seeks to transfer. The second method, referred to as the "Pool Procedure," entitles an employee who has been laid off to designate a number of jobs in other seniority divisions in which she is interested and to which she would like to transfer when called back to work. If the employee is considered qualified for a designated job and an opening occurs in that position, she will be called back to it without losing her seniority. An employee who takes advantage of the Pool Procedure also has the option of returning to her original seniority division if an opening should later occur there. One of the considerations taken into

---

1. The October 15, 1976, anterior cut-off date used in plaintiffs' motion was changed to October 15, 1975 in their brief.

account in considering an employee's qualifications for purposes of either of the preceding transfer methods is pre-employment work experience.

The Office of Federal Contracts Compliance Programs (OFCCP) Agreement that went into effect at Hayes on June 9, 1978, provides a third method of transfer without loss of seniority. Under the OFCCP agreement, a female employee may transfer out of seniority divisions 1 and 3 to other seniority divisions without loss of seniority if she is qualified for the jobs to which she seeks to transfer. The OFCCP Agreement was designed to provide women employees at Hayes access to jobs outside seniority divisions 1 and 3, in which most women employees were concentrated.

The CWA collective bargaining agreement, covering most office and technical personnel at Hayes, took effect in 1981. Prior to that date, office and technical workers were non-unionized or "company" employees. There are, even at present, some office and technical workers who are not CWA union members.

The CWA is comprised of departments rather than seniority divisions. Under the CWA contract, employees in a particular department are given preferential consideration when an opening occurs for a higher rated job in their department. All qualified employees in the department are eligible to fill an opening in their department before anyone outside the department is considered. Like the UAW, transfer from one CWA department to another results in a loss of seniority except under certain limited circumstances. An employee may move to another department without loss of seniority under Section 15(a) of Article IV of the CWA contract, if determined to be qualified by Hayes. An employee may also transfer to a former job classification without loss of seniority if determined to be qualified for the job. Likewise, an employee may return to a previously held job classification at the time of a RIF if there is an opening and if the Personnel Department's records reflect the job had previously been performed satisfactorily by that

employee. In determining whether an employee has the qualifications to perform a particular job the company takes into account the employee's "ability, physical fitness, efficiency, and dependability."

There is no provision for posting job openings in either the UAW or the CWA; rather, news of job openings is circulated by word of mouth.

The practices and procedures summarized above are among those challenged by the plaintiffs on behalf of all female employees at Hayes. These challenges are made on two grounds. First, the plaintiffs claim that the prior experience qualifications and the departmental and seniority division preferences at Hayes have had an adverse impact on female employees' chances of being hired, transferred or promoted. The plaintiffs contend that female employees at Hayes have been concentrated in "less desirable" jobs from which they have been unable to move because of the company's restrictive policies. Secondly, according to the plaintiffs, female employees are subjected to the highly subjective opinions and evaluations of Hayes' all-male Personnel Department and mostly-male supervisory staff who are given wide latitude in interpreting the vague qualification standards applicable to initial placements, transfers, promotions, pay considerations, and work evaluations. The interpretive authority given these supervisors has allegedly resulted in discrimination against Hayes' female employees.

██ The plaintiffs cannot satisfy their burden under Fed.R.Civ.P. 23 by simply alleging "across the board" discriminatory practices by the defendant. The Supreme Court made it clear in *General Telephone Company of Southwest v. Falcon*, 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (hereinafter *Falcon*), that

Title VII contains no special authorization for class suits maintained by private parties. An individual seeking to maintain a class action under Title VII must meet 'the prerequisites of numerosity, commonality, typicality and adequacy of representation' specified in Rule 23(a).

These requirements effectively 'limit the class claims to those fairly encompassed by the named plaintiff's claims.' *Id.* at 156, 102 S.Ct. at 2369.

At the outset, plaintiffs' EEOC charges and complaints must be examined to determine if the class claims are "fairly encompassed" within the named plaintiffs' claims.

Keeton filed her charge with the EEOC in November 1977. This is the only EEOC charge she has ever filed. Keeton had been employed at Hayes since August 1965. From the date she began with Hayes until 1978 she held UAW jobs in seniority division 3. In September 1978 she transferred to a job in Seniority Division 4 under the OFCCP Transfer Program. In her charge she complained that she had requested a transfer to the position of Inspector in the Quality Assurance (QA) Department (seniority division 9) in approximately December 1976. She claimed the QA Supervisor told her that she had too much seniority and not enough qualifications for the Inspector position. Later she learned that several men had been hired as QA Inspectors, thereby prompting questions and complaints by her to the Personnel Manager and a union official.

Keeton's EEOC complaint also charged that two women (Annette Stansell and Barbara Allen) were given jobs as Inspectors in the QA Department. She complained that both Stansell and Allen had less seniority and fewer qualifications than she. Finally, she pointed out that Stansell and Allen, the only female Inspectors, started as Inspectors "C" even though no male employee had ever held a position lower than Inspector "B".

Keeton received her Right to Sue Letter from the EEOC in September 1982. The letter was issued because "more than 180 days had passed" since Keeton's charge was filed.

The plaintiffs' complaint was filed on November 1, 1982. Ms. Keeton's individual claims reiterated those contained in her EEOC charge. In addition, she alleged generally that she had been discriminated against in the defendant's policies involving promotions, discipline, recall and other terms and conditions of employment.

Annette Stansell has had three separate episodes of employment at Hayes. Although she was first hired by Hayes in February 1966, she was laid off twice by the company. After her second lay-off she was not rehired by Hayes for more than three years. Therefore, she lost all her previously accumulated seniority and began her third episode of employment with Hayes in April 1977 as if she that were her first date of employment at the facility. In October 1977 Stansell was transferred to the QA Department as an Inspector "C" (seniority division 9) pursuant to Section 17(a) of Article IV of the UAW collective bargaining agreement. She remained in that position until January 1978, when she transferred to the then non-union job [2] of QA Specialist. On April 1, 1980, Stansell was discharged for alleged insubordination.

Stansell filed her first EEOC charge in January 1979, while still employed at Hayes. In that charge she alleged sexual harassment and discrimination based on sex. She claimed that because she had rejected her supervisor's sexual advances she was denied a pay increase, a promotion to a QA technician, and she was reprimanded for unsatisfactory attendance.

On April 2, 1980, one day after her termination from Hayes, Ms. Stansell filed an amended charge with the EEOC. In her amended charge she added the following complaints: (1) an Equal Pay Act violation; (2) wrongful termination based on her violation of a work rule prohibiting wearing open-toed shoes in certain parts of the plant; (3) a retaliation claim for having filed a charge with the EEOC; and (4) a complaint regarding her supervisor's failure to promote her to the position of Estimator, a position for which she had applied

---

**2.** The job of QA Specialist was covered by the CWA's collective bargaining agreement when it took effect in 1981.

on December 17, 1979, and which was given to a less qualified white male.

Stansell also complained about unequal application of company rules to men and women. Specifically, she alleged that men were not sanctioned for violating company rules regarding wearing rings in the plant. Yet, according to Stansell, she and two other women had been discharged for wearing open-toed shoes in the plant in violation of a company rule. Stansell added that both of these women were reinstated when it was learned they had received no prior warning about this violation. Stansell claimed that she too had received no prior warning about her violation of the open-toed shoe prohibition, yet she was not reinstated.

In April 1981 Stansell was informed that the EEOC found no merit to her Equal Pay Act claim. In August 1982 she received the Right to Sue Letter covering the remainder of her claims in both EEOC charges. The letter was issued because "more than 180 days had expired" since she filed her charge.

Stansell's individual claims in the class complaint mirror those contained in her EEOC charges.

■ It is evident in examining the plaintiffs' EEOC charges and complaints that some matters alleged on behalf of the class are not "fairly encompassed" by the named plaintiffs' claims. Although the plaintiffs allege discrimination in "initial placements," neither Stansell nor Keeton has complained of discrimination in hiring by Hayes. Further, any hiring complaints that the plaintiffs might have had are long since time barred. Accordingly, the plaintiffs cannot pursue the class claims alleging discrimination in "initial placements" and those claims are due to be dismissed.

■ The plaintiffs' remaining claims— denial of (and discouragement from seeking) promotional or transfer opportunities, denial of equal pay,[3] and subjection to terms and conditions of employment dissimilar to those afforded male employees— must be examined to determine whether they satisfy the numerosity, commonality, typicality, and adequacy of representation requirements of Fed.R.Civ.P. 23(a). *Falcon*, 457 U.S. at 156, 102 S.Ct. at 2369. In addition to satisfying the Rule 23(a) requirements, the plaintiffs must establish that they are members of an identifiable class that has suffered discrimination. *See Walker v. Jim Dandy Co*, 747 F.2d 1360, 1364 (11th Cir.1984). Further, plaintiffs must satisfy the requirements of one of the subdivisions of Rule 23(b). In this case the applicable subdivision, 23(b)(2), provides that "the party opposing the class must have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the class as a whole." Each of these requirements must be satisfied if the court is to certify this class.

Although the plaintiffs allege that each of the more than 175 female employees at Hayes is a potential class member, the size or numerosity of the class will, to a large extent, depend on the definition of the class. Consequently, the court will not focus its attention on the numerosity requirement of Rule 23(a)(1). Nor will much emphasis be placed on the commonality requirement of 23(b)(2) since the plaintiffs appear to have some questions of law or fact common to the class. Even assuming that the numerosity and commonality requirements of Fed.R.Civ.P. 23(a) are satisfied, it remains questionable whether plain-

**3.** There is some question whether an Equal Pay Act claim can be maintained in a Rule 23 class action in light of the Fifth Circuit opinion in *LaChappelle v. Owens-Illinois,* 513 F.2d 286 (5th Cir.1975). The *LaChappelle* Court held that claims under the ADEA, an amendment to the FLSA, could not be maintained in a Rule 23 class action because of the fundamental differences between the "opt in" class standard of 29

U.S.C. § 216(b), which governs in FLSA cases, and the "opt out" standard of Rule 23. The *LaChappelle* court's reasoning seems equally applicable to claims under the Equal Pay Act, which is also an amendment to the Fair Labor Standards Act and would also be governed by 29 U.S.C. § 216(b)'s "opt in" class action standard. *See Kuhn v. Philadelphia Elec. Co.,* 475 F.Supp. 324 (E.D.Pa.1979).

tiffs can establish that their claims or defenses are typical of the claims and defenses of the class, and whether they will fairly and adequately protect the interests of the class. The court's decision regarding the certifiability of the class proposed by plaintiffs will hinge on these two requirements of Rule 23(a)(3) and 23(a)(4).

 Turning to the adequacy of the plaintiffs' representation first, the court is satisfied that there is no real controversy regarding the ability and dedication of plaintiffs' attorneys. Messrs. Wiggins and Childs have the experience and dedication to properly represent the plaintiffs. The adequacy of the representation of the named plaintiffs themselves is more controversial, however, because there appears to be some antagonism between both of the named plaintiffs and one or a number of women employees at Hayes. Antagonism between the class representatives and members of the class may impact on the quality of representation the class representatives are able to provide.[4]

To illustrate, in Keeton's EEOC charge she alleged that she had been denied a transfer to the job of Inspector in the Quality Assurance Department but that two female co-workers, Annette Stansell and Barbara Allen, were transferred into the job of Inspector "C" even though they had less seniority and fewer qualifications than she. Likewise, Stansell charged in her amended EEOC complaint that she had been discharged for wearing open-toed shoes and was not reinstated while two female co-workers were discharged for the same infraction and later reinstated. The court has some doubt about the propriety of the named plaintiffs' representation of all female employees at Hayes in light of these facts.

There is also some concern regarding the adequacy of Keeton's representation in light of her failure to vigorously pursue her 1977 EEOC charge through the EEOC. The charge sat dormant for five years.

During this five year period, Ms. Keeton visited the EEOC office only three times. Stansell's ability to represent the class is drawn into question for a different reason. She has not worked at Hayes for almost five years and although she claims to have regular social contact with other female employees at Hayes, it is questionable whether she can adequately represent the class after such a long absence from the plant. Moreover, Stansell's last job at Hayes (QA Specialist), was a non-union job when she held it. In 1981, the QA Specialist job came under the CWA collective bargaining agreement. The unionization of Stansell's last job may have so significantly changed the terms and conditions of the employment about which she is complaining to draw into question her adequacy as a class representative. Finally, it is questionable whether Stansell and Keeton could act as representatives for female employees in the CWA when neither has ever been a member of that union.

Perhaps the single greatest hurdle which plaintiffs must overcome in this case is the Rule 23(a)(3) requirement that their claims and defenses be typical of those of the class. Both Stansell and Keeton have made claims which are peculiar to themselves and which appear to require individualized treatment by the court. Stansell has alleged sexual harassment, retaliation and discharge. According to the affidavit of Ray Pike, Hayes' Personnel Manager at the Birmingham Airport Facility, Annette Stansell was the only female employee at Hayes who ever made a sexual harassment claim against another Hayes employee either to the EEOC or the OFCCP. Stansell's retaliation and discharge claims will likewise require consideration of individual circumstances, and consequently seem unlikely to result in efficiency or economy if tried in the posture of a class action. In her termination complaint, for instance, Stansell points out that she was treated differently than two female co-workers

---

4. At the same time, allegations contained in the EEOC charges of both plaintiffs indicating differences in treatment among female employees at Hayes raise some questions regarding the disparate treatment claims made on behalf of the class as a whole.

who were discharged for the same infraction but later reinstated. Clearly, her termination complaint is peculiar to her, and not common to women as a class.

Keeton also has made claims peculiar to herself. Although her chief complaint in her EEOC charge is that she had been denied a transfer to the job of Inspector, it appears that this complaint is not common to women as a class because two other women were transferred to the position of Inspector,[5] shortly after plaintiffs' unsuccessful efforts. According to the defendants' submissions a number of women now hold positions as Inspectors (including Inspector "A" and "B") in seniority division 9.

Plaintiffs have claimed that the policies and practices at Hayes about which they complain are pervasive and affect all women employees at Hayes. Although plaintiffs have alleged discriminatory subjective decisions by male supervisors and Personnel Board Members, they have not established that the subjective decisions made by Hayes' Personnel Board and supervisory staff result in pervasive sex discrimination in the company. *Cooper v. Federal Reserve Bank of Richmond,* — U.S. —, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984). It is not enough to allege that subjective decisions are being made by male employees that affect female employees adversely; plaintiffs must establish that the discrimination alleged is the company's standard operating procedure. *Id.,* — U.S. at —, 104 S.Ct. at 2800. Plaintiffs have failed to carry that burden in this case.

Further, plaintiffs have failed to carry the burden of establishing, by statistical evidence or otherwise, that Hayes' use of prior experience qualification standards adversely impact on Hayes' female employees.

The court is not deciding the merits of this case in ruling on this motion for class certification. However, some exploration into the merits has been necessary to determine the suitability of this case for class treatment. In light of all the evidence submitted to this court, plaintiffs have failed to establish that the class proposed by them is suitable for certification by this court.

Accordingly, plaintiffs motion for class certification is due to be DENIED.

---

5. Apparently the women who were made Inspectors came in as Inspectors "C." According to plaintiffs, no male employee had ever held a position lower than an Inspector "B" and even new hires came in as an Inspector "A" or "B."

Although Stansell might legitimately have made a complaint regarding her job as a Inspector "C" she did not do so and is now time-barred from doing do so.