**Stanhouse C. IVY, Plaintiff,**

**v.**

**Elizabeth H. DOLE, Secretary of Transportation, Defendant.**

**Civ. A. No. 85–177–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

May 31, 1985.

June D.W. Kalijarvi, Kalijarvi & Chuzi, P.C., Alexandria, Va., for plaintiff.

Dennis E. Szybala, Asst. U.S. Atty., Alexandria, Va., for defendant.

## MEMORANDUM OPINION

RICHARD L. WILLIAMS, District Judge.

This matter comes before the Court on defendant's motion for summary judgment pursuant to Rule 56. The defendant contends that present action is barred by the Consent Decree entered by this Court in *Good v. Helms.* Summary judgment is appropriate when, viewing the facts in the light most favorable to the non-moving party, no genuine issues of material fact remain and the case can be decided as a matter of law. *King v. Gemini Food Services,* 438 F.Supp. 964 (E.D.Va.1976).

*Facts*

Plaintiff, a police officer employed by the Federal Aviation Administration (FAA) at Washington National Airport, filed this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. The event which precipitated this suit occurred on January 25, 1979, when plaintiff Ivy failed to appear for work; he was subsequently placed on AWOL status and suspended for two days for this absence. Ivy contended that he was meeting with an EEO counselor on January 25, and that therefore his absence was fully justified. On April 28, 1979, Ivy filed a formal EEO complaint alleging that his suspension was racially motivated, and that the FAA had created a work environment in which he could not be promoted.

After carefully considering all of the evidence, the Hearing Examiner recommended a finding of no race discrimination, but did find that Ivy should not have been placed on AWOL status for the two hours on January 25 when he was with the EEO counselor. The FAA accepted these findings, and paid Ivy for the two hours in question. Nonetheless, on September 21, 1983, Ivy appealed the Hearing Examiner's findings to the EEOC. The EEOC decision, finding no evidence of racial discrimination, was sent to Ivy on December 28, 1984.

While Ivy's appeal was pending before the EEOC, *Good v. Helms,* No. 83–540–A (E.D.Va. December 23, 1983), was litigated and resolved in this Court. *Good* was a Title VII class action alleging that the FAA was engaging in various discriminatory disciplinary and promotion practices. The class in *Good,* which was certified pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure, consisted of "... all present and future black police officers below the rank of sergeant who are or will be employed at Washington National Airport as of August 9, 1983." Ivy, the plaintiff in this action, was a member of the plaintiff class in *Good.*

After extensive discovery and vigorous negotiations by the counsel for both sides, the parties in *Good* entered a proposed Consent Decree which provided the plaintiff class with a number of tangible benefits, including a revamped promotion system and a new disciplinary process. The proposed decree also contained the following provisions:

\* \* \* \* \* \*

*Effects of Consent Decree*

4. The plaintiffs and defendants enter into this Consent Decree and agree to be bound by the terms and conditions set forth herein. The purpose of this Consent Decree is to finally satisfy and extinguish the claims brought by the plaintiff class in this case. The terms and provisions of this Consent Decree constitute the entire agreement between the parties.

\* \* \* \* \* \*

*Release*

21. Final approval by the Court of this Consent Decree shall operate to discharge the defendants from all liability to the plaintiffs for claims arising under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, which are pending on the effective date of this Consent Decree and all such claims based upon events that occurred prior to this Consent Decree. This agreement is in full and complete disposition of allegations in the plaintiffs' complaint.

\* \* \* \* \* \*

On November 17, 1983, the proposed Decree was sent to all members of the *Good* class, including Ivy, and notice was given that there would be a hearing on December 23, 1983, to determine whether the settlement should be approved by the Court. Ivy, as a member of the class, filed objections to the settlement prior to the hearing, charging that it was inadequate in that it did not provide for any monetary relief, and noting that approval of the decree would foreclose his right to pursue his pending EEOC claim. After carefully reviewing the terms of the settlement and considering Ivy's objections, the *Good* court denied the objections and entered the Consent Decree.

*Discussion*

■ Under basic principles of *res judicata*, a judgment on the merits in a prior suit bars a subsequent suit between the same parties based upon the same cause of action. *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). Each of the three elements—a prior judgment on the merits, identity of parties, and the same cause of action—has been met here.

■ First, both parties in this action were also parties to the *Good* suit. Second, the claims raised by Ivy in this action are exactly the same claims that he pursued before the EEOC, and the same claims he attempted to preserve in his objections to the *Good* consent decree. Ivy's claims fall squarely within the scope of the *Good* consent decree, which specifically discharged the defendants from all liability to the plaintiff class members, including Ivy, which arose under Title VII and were pending on December 23, 1983. Third, the consent decree in *Good* constitutes a final judgment on the merits, since a valid judgment entered into by agreement or consent has the same *res judicata* effect as a judgment or decree entered after trial. *Nash County Board of Education v. Biltmore Co.*, 640 F.2d 484, 486 (4th Cir.1981).

The plaintiff contends that, under the recent Supreme Court opinion in *Cooper v. Federal Reserve Bank of Richmond*, —— U.S. ——, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984), his claims are not barred by the *Good* Consent Decree. In *Cooper*, the EEOC and employees of the defendant bank brought an action for unlawful discriminatory employment practices during a specified time period. At trial, the district judge found that the bank had engaged in a pattern and practice of racial discrimination with respect to employees in certain lower pay grades, but that the bank had not engaged in such a pattern and practice of discrimination with respect to employees in higher pay grades. Thereafter, the District Court refused to consider the individual discrimination claims of certain employees in those higher pay grades in light of its finding that there was no classwide discrimination in those grades.

This latter group of employees, known as the Baxter petitioners, then filed a separate action against the bank alleging that each of them had been denied promotions because of their race in violation of 42 U.S.C. § 1981. The District Court denied the Bank's motion to dismiss in this second action, but the Fourth Circuit reversed, holding that the judgment in the Cooper class action precluded the Baxter petitioners from pressing their individual claims against the Bank in a subsequent action. The court then reversed the order denying the Bank's motion to dismiss, and remanded the Baxter complaint for dismissal. *EEOC v. Federal Reserve Bank of Rich-*

*mond,* 698 F.2d 633 (4th Cir.1983). The Baxter petitioners appealed from that judgment, and the Supreme Court reversed.

■ The Supreme Court's holding in *Cooper* is clear: the failure of a plaintiff to prove a *classwide* pattern and practice of discrimination does not automatically foreclose a subsequent attempt by that plaintiff or a fellow class member to prove an *individual* claim of discrimination. In *Cooper,* although their claims of classwide discrimination failed, the Baxter petitioners never litigated their individual claims against the Bank. Therefore, the Supreme Court concluded, while the judgment in the original class suit precludes class members such as the Baxter petitioners from relitigating whether the Bank engaged in a pattern and practice of discriminatory conduct, it does not preclude them from litigating individual claims not specifically resolved in the prior litigation.

■ In the present matter, Ivy contends that the Consent Decree in *Good* only resolved the classwide claims of the police officers, that he has never had the opportunity to litigate his individual claims of discrimination, and that therefore he is not precluded from pursuing his claims in a separate suit. Ivy's argument, however, ignores the critical difference between the *Good* Consent Decree and the judgment of the District Court in the *Cooper* class action. In *Cooper,* the District Court never considered the individual claims of the Baxter petitioners; in *Good,* the plaintiffs' individual claims were specifically resolved in the settlement agreement. The final Consent Decree in *Good,* then, not only resolved the common class claims, but it also disposed of the individual claims as well.

Plaintiff urges this Court to read *Cooper* so broadly that judgments in class actions would never be able to preclude dissatisfied individual class members from pursuing their individual claims in subsequent law suits. This position fails to fully appreciate that, while class actions may occasionally resolve *only* common, class-wide issues (as in *Cooper*), they·frequently resolve individual claims as well, either through consent decrees (as in *Good* ), individual "mini-trials", or judgments which recognize that the individual class members' claims are coextensive with the common, class-wide claims. In *Cooper* itself, the Supreme Court recognized that "a judgment in a properly entertained claim action is binding on class members in any subsequent litigation ... on any issue actually litigated and determined, if its determination was essential to that judgment." *Cooper,* —— U.S. at ——, 104 S.Ct. at 2799. Since the Consent Decree in *Good* was properly entered by a court of competent jurisdiction, and since it specifically resolved Ivy's individual claims of discrimination, the present action is barred by principles of *res judicata.*

■ While Ivy may complain that his individual claims were never actually litigated, and that he has not been given individual relief in the *Good* Consent Decree, the Court believes that no injustice is done by dismissing the present action. First, Ivy did not object when the *Good* class action was certified under Rule 23(b)(2). Had Ivy been able to persuade the *Good* court that his interests were divergent from those of the class as a whole, the class could have been certified under Rule 23(b)(3), which would have fully protected Ivy's right to opt out of the class. Second, Ivy did have the opportunity to present his objections to the Court prior to the time that the Consent Decree was entered. Ivy submitted numerous objections to the proposed decree, and these objections were carefully considered by the Court before the decree was entered. Third, Ivy could have appealed the *Good* court's denial of his objections and entry of the Consent Order; he failed to do so. Finally, as a member of the class in *Good,* Ivy is receiving all of the benefits of a hard-bargained, well-crafted settlement which adequately address the problems raised in his complaint.

Accordingly, the defendant's motion for summary judgment is GRANTED and the case is DISMISSED.

Let the Clerk send a copy of this memorandum opinion to all counsel of record.