844 F.2d 789
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 No. 87-3462.
 
 Donald L. TURNER, Plaintiff-Appellant,
v.
James DEAN, et al., Defendants-Appellees.
 United States Court of Appeals, Sixth Circuit.
 April 12, 1988.
 Before MILBURN, Circuit Judge, WEICK and CONTIE, Senior Circuit Judges.
 PER CURIAM.
 
 
 1
 Donald L. Turner, appellant, challenges the district court's grant of summary judgment in favor of appellees, James Dean, a corrections officer at Marion Correctional Institution (MCI), Max Kennedy, Chairman of the Rules Infraction Board (RIB) at MCI, and Russell Albright and Tom Wing, members of the RIB at MCI, on Turner's allegations of discrimination in violation of 42 U.S.C. Sec. 1983. Because we believe the district court abused its discretion in ruling on the appellees' summary judgment motion without first addressing Turner's motion to amend his original complaint, we reverse the judgment of the district court and remand for further proceedings.
 
 I.
 
 2
 On June 19, 1986, Turner, an inmate at MCI, filed a complaint charging Dean, Kennedy, Albright, and Wing with violating his constitutional right to equal protection. Specifically, Turner alleged that, on March 9, 1986, he attempted to report to his job as chief clerk of the law library at MCI when Dean issued a conduct report against him charging him with being out of place, creating a disturbance, and disobeying an order. He added that when he questioned Dean about why he had not issued conduct reports against two other inmates who had stopped at the library door, Dean addressed him with profanity and snatched his identification badge from him.
 
 
 3
 Further, in his complaint, Turner stated that he appeared before the RIB on the charged infractions and that RIB members Kennedy, Albright, and Wing found him guilty of the infractions.[1] In so finding, Turner complained that the members relied very heavily on his daring to question Dean about his discriminatory enforcement of the institution's rules.
 
 
 4
 Finally, Turner sought among other things $50,000 punitive and compensatory damages against Dean, individually, and $50,000 punitive and compensatory damages against Kennedy, Albright, and Wing, jointly, for depriving him of his civil rights.
 
 
 5
 On November 5, 1986, Dean, Kennedy, Albright, and Wing, filed for summary judgment. They argued that summary judgment should be granted in their favor because: (1) Dean had not discriminated against Turner by issuing a conduct report against him but not two other inmates; (2) the RIB had not acted arbitrarily or capriciously in finding Turner guilty of disobeying an order and being out of place; and (3) profanity and slight physical contact are not cognizable under 42 U.S.C. Sec. 1983.
 
 
 6
 In support of their summary judgment motion, the appellees submitted the March 9, 1986 conduct report written by Dean. In the report Dean stated that he told Turner not to loiter in front of the library. He explained that he declined to write up two other inmates for loitering because they were merely reading a posting of library hours. When Turner started yelling at him as to why he had not asked the other two inmates to move along, he cited Turner for disobeying an order, being out of place, and creating a disturbance. Further, in support of their summary judgment motion, the appellees submitted Kennedy's affidavit wherein Kennedy stated that the RIB relied upon Dean's conduct report as well as the testimony of Dean and inmates Moses and Bosely in finding Turner guilty of being out of place and disobeying an order.
 
 
 7
 On November 13, 1986, Turner filed a motion for summary judgment. In his motion he argued for the first time that Dean had discriminated against him on the basis of his race because the two inmates Dean had not cited were white while he is black. He supported his motion with the affidavit of inmate Moses who asserted that the two inmates who were not written-up were white. Turner further pointed out the error of the appellees in arguing that he claimed to have been discriminated against in relation to inmates Moses and Bosely. His complaint asserts that while Moses and Bosely accompanied him on March 9, 1986, two other inmates stopped at the library door but were not cited.
 
 
 8
 The appellees responded to Turner's summary judgment motion. They addressed Turner's racial discrimination claim and cited Ustrak v. Fairman, 781 F.2d 573 (7th Cir.), cert. denied, 107 S.Ct. 95 (1986). In that case, a white prisoner filed a 42 U.S.C. Sec. 1983 action against a black warden who had withdrawn the prisoner's commissary privileges for having contraband in his cell. The warden, the prisoner claimed, had not similarly punished his black cell-mate as past practice at the prison dictated. In dismissing the prisoner's claim, the court held:
 
 
 9
 A prima facie case, whether under the equal protection clause of the Fourteenth Amendment or Title VII of the Civil Rights Act of 1964 or any other antidiscrimination principle that we are familiar with, requires proof of a state of facts that makes it more likely than not that there has been discrimination. See, e.g. Cooper v. Federal Reserve Bank, 467 U.S. 867, 104 S.Ct. 2794, 2799-800, 81 L.Ed.2d 718 (1984).
 
 
 10
 Ustrak, 781 F.2d at 576. The appellees argued, on the basis of Ustrak, that Turner's racial discrimination claim could not be sustained because the facts do not support a claim that, more likely than not, Turner had been discriminated against on the basis of his race.
 
 
 11
 On January 12, 1987, Turner moved, pursuant to Fed.R.Civ.P. 15, to amend his complaint to include a claim of racial discrimination. In his memorandum supporting his motion, Turner alleged that, at the time he filed his original complaint, he had not been aware that the inmates who had not been written-up were white.
 
 
 12
 On January 30, 1987, the magistrate issued his report and recommendation in which he found that Turner's citations for disobeying an order and being out of place were rationally related to the legitimate state goal of maintaining order within the prison. The magistrate expressly relied on the fact that neither party alleged that fundamental constitutional rights are at stake, or that plaintiff has been subjected to invidious or class-based unequal treatment in declining to invoke strict scrutiny. Further, the magistrate found that the RIB's determination of guilty was neither arbitrary nor capricious, that allegations of verbal abuse are not actionable under 42 U.S.C. Sec. 1983, and that the de minimus level of imposition caused by tearing off a name badge is utterly without constitutional significance. Finding no genuine issue of material fact and finding the appellees entitled to judgment as a matter of law, the magistrate recommended that summary judgment be granted in favor of the appellees. The magistrate further recommended that all remaining motions, including the motion to amend the complaint to add a claim of racial discrimination, be denied as moot.
 
 
 13
 Turner objected to the magistrate's report and recommendation, and, on April 16, 1987, the district court adopted the report and recommendation. It thereby granted summary judgment in favor of the appellees. In so doing, it stated that although the magistrate had applied the rationally related test, the appellee's conduct could have withstood scrutiny under the compelling state interest test. "However," the court continued, "[Turner] has not adequately established a violation of a fundamental right or a suspect classification requiring an analysis under the compelling state interest standard." The court further ordered that all remaining motions be denied as moot. This timely appeal followed.
 
 
 14
 The only issue on appeal is whether the district court abused its discretion in granting summary judgment in favor of the appellees without first considering and ruling on Turner's motion to amend his complaint to include an allegation of racial discrimination pursuant to 42 U.S.C. Sec. 1983.
 
 II.
 
 15
 Rule 15(a) of the Federal Rules of Civil Procedure provides that a party desiring to amend his pleading after a responsive pleading has been served may do so "only by leave of court ... and leave shall be freely given when justice so requires." The Rules provide for a liberal policy of permitting amendments to ensure that claims are adjudicated on their merits. Tefft v. Seward, 689 F.2d 637, 639 (6th Cir.1982). A court's refusal to grant leave to amend is reviewable under an "abuse of discretion" standard. Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330-32 (1970); Tefft, 689 F.2d at 639. An abuse of discretion occurs when a district court fails to state the basis for its denial of a motion or fails to consider the competing interests of the parties and the likelihood of prejudice to the opponent. Moore v. City of Paducah, 790 F.2d 557, 559 (6th Cir.1986). As the Supreme Court stated in Foman v. Davis, 371 U.S. 178, 182 (1962):
 
 
 16
 If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave sought should, as the rules require, be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely an abuse of that discretion and inconsistent with the spirit of the Federal Rules.
 
 
 17
 Consistent with these principles, this court recently held that a district court abused its discretion when it dismissed a suit on the basis of the original complaint without first considering and ruling on a pending motion to amend the complaint. Marks v. Shell Oil Co., 830 F.2d 68, 69 (6th Cir.1987). The plaintiff in Marks filed her original complaint in October of 1985, claiming inter alia, that Shell had breached its franchise agreement. Her counsel withdrew in June of 1986, six months prior to the originally scheduled trial date in December, 1986, and was replaced by another attorney. Shortly thereafter, Shell filed for summary judgment. Marks, through her new attorney, answered Shell's motion, and, in addition, moved to amend the original complaint to include new claims of bad faith termination and sex discrimination and to expand upon the original claim of breach of the franchise agreement. In September of 1986, the district court granted Shell's motion for summary judgment without indicating that it had ever considered Mark's motion to amend her complaint.
 
 
 18
 On appeal, this court vacated the grant of summary judgment and remanded for further proceedings. The court reasoned as follows:
 
 
 19
 Given the policy of liberality behind Rule 15(a), it is apparent that when a motion to amend is not even considered, much less not granted, an abuse of discretion has occurred. The court in Espey [v. Wainwright, 734 F.2d 748, 750 (11th Cir.1984) ] determined that unless the district court's reasons for dismissing the motions to amend were "readily apparent" the dismissal could not be sustained. Because the district court did not consider the motion, we can discern no such "readily apparent" reasons here....
 
 
 20
 * * *
 
 
 21
 * * *
 
 
 22
 Therefore, we hold that dismissal of the suit based on the original complaint without first considering the motion to amend was an abuse of discretion. The district court should have evaluated Marks' motion in light of Fed.R.Civ.P. 15(a) and its liberal policy of amendment.
 
 
 23
 Marks, 830 F.2d at 69-70. (citation omitted & emphasis added).
 
 
 24
 A similar conclusion is called for in the present case. At the time the district court granted summary judgment for the appellees, Turner's January 12, 1987 motion to amend his complaint was pending before the court. Just as the plaintiff in Marks, Turner sought to amend his original complaint after motions for summary judgment had been filed. Additionally, just as the plaintiff in Marks, Turner sought to amend his complaint well before the originally scheduled trial date of April 28, 1987. Further, a November 14, 1986 pretrial order in this case indicates that motions practice was to close on January 26, 1987, two weeks after Turner filed his motion to amend. Moreover, similar to the district court in Marks, the district court in this case, proceeded to grant summary judgment for the appellees without indicating a reason as to why Turner's motion was not considered, much less granted. Surely, a denial as moot does not indicate why a motion filed at least three months earlier would be considered moot. Such action by the district court, that is, failure to consider and rule on Turner's pending motion to amend his complaint, was an abuse of discretion. That is not to say that the district court was required to grant Turner's motion. Rather, as in Marks, the court should have evaluated the pending motion in light of the liberal policy of amendment embodied in the Federal Rules, and, at the very least, should have provided a reasoned explanation, such as would be "readily apparent" on the record, as to why the court decided the way it did.
 
 
 25
 Additionally, the record discloses no evidence that Turner's motion was made in bad faith or in an effort to delay the proceedings. Indeed, Turner moved to amend his complaint shortly after the appellees indicated that Turner had not made racial discrimination a basis of his complaint. Further, since the appellee's addressed Turner's racial discrimination claim it does not appear that they would have been unfairly prejudiced had the motion to amend been granted. Finally, we note that Turner offered a reasoned explanation for his proposed amendment. In his memorandum attached to his motion to amend, Turner explained that, at the time he filed his original complaint, he was unaware that the two inmates who had not been written-up were white. He stated that he subsequently learned they were white when inmates Moses and Bosely filed affidavits to that effect.
 
 
 26
 In light of these facts, and pursuant to the reasoning of Marks, the district court abused its discretion in granting summary judgment in favor of appelleees before considering and ruling on Turner's pending motion to amend. Accordingly, the judgment of the district court is VACATED and the case is REMANDED to the district court for proceedings not inconsistent with this opinion.
 
 
 
 [1]
 The record indicates that the RIB found Turner guilty of disobeying an order and being out of place, but not guilty of creating a disturbance. He was sentenced to ten days disciplinary confinement, and dismissed from his job as a law clerk in the library. On appeal, the Superintendent, N.W. McMackin, modified the decision of the RIB by suspending seven days of the ten-day sentence and allowing him to retain his library job. The superintendent's decision indicates that Turner could have appealed further to Director Seiter. The record, however, does not indicate whether Turner did, indeed, appeal further