**Teresa TODHUNTER, Plaintiff,**

**v.**

**CULLMAN COUNTY COMMISSION ON EDUCATION, Defendant.**

Civ. No. 87–HM–5019–NE.

United States District Court, N.D. Alabama, Northeastern Division.

July 21, 1987.

John C. Falkenberry, Lisa Huggins, Falkenberry, Whatley and Heidt, Birmingham, Ala., for plaintiff.

Thomas A. Smith, Jr., Cullman, Ala., for defendant.

## SUPPLEMENTAL FINDINGS OF FACT AND CONCLUSIONS OF LAW

HALTOM, District Judge.

The final bench hearing in the above entitled Title VII pregnancy discrimination action brought by plaintiff Teresa Todhunter against the defendant Cullman County Commission on Education came on to be heard at the Federal Courthouse in Huntsville, Alabama on July 13th and 14th, 1987. At the conclusion of all of the evidence in the case the Court orally announced in open court its ruling in favor of defendant and against plaintiff and thereupon dictated into the record its findings of fact specially and stated separately its conclusions of law thereon, pursuant to Rule 54, Fed.R. Civ.P. The Court now makes the following additional and supplemental findings of facts specially and states separately its additional and supplemental conclusions of law thereon.

## SUPPLEMENTAL FINDINGS OF FACT [1]

1. Plaintiff Teresa Todhunter is a white female resident citizen of the State of Alabama now 27 years of age. Her birth date is January 15, 1960. She is married and holds all requisite in force teaching certificates and educational attainments to duly qualify her to teach all grades in the elementary public schools of the State of Alabama. Prior to her employment as an elementary teacher by the Cullman County Commission on Education she was employed as a kindergarten teacher by a private kindergarten school in Arab, Alabama from February 1983 to August 1983 and as a teacher (grades 1, 5, all subjects) by another private school in Huntsville, Alabama from August 1983 to September 1983.

2. Shortly following the commencement of the 1983–1984 school year Teresa Todhunter, then age 23, was employed on a one-year basis by the Cullman County Commission on Education on the recommendation of the County Superintendent of Education to serve as a federally funded Chapter I reading teacher in the elementary grades of Fairview School in Cullman County, Alabama, a public school operated under the control and supervision of the County Board of Education of Cullman County, Alabama which by local legislative act is named and designated as "Cullman County Commission on Education."

3. The Cullman County Commission on Education follows the practice, custom and procedure of entering into employment agreements with its nontenured teachers on a one year basis with provision that the teacher employee agrees to timely submit his or her resignation prior to the end of the actual school year. Under this practice, the defendant board in regular meeting assembled timely "accepts" the resignation. Presumably, this practice was commenced a number of years ago his or her nonrenewal before the close of the actual school year pursuant to § 16–24–12,

Code of Ala.1975. In any event the legality of such practice is not before the Court for decision.

4. Upon being employed by the defendant board of education for the 1983–84 school year Mrs. Todhunter signed the regular employment agreement described in the preceding finding of fact which included the above referenced resignation provision.

5. Fairview School is comprised of grades 1–12, inclusive, plus kindergarten. Keith Pattillo, a white male, is Principal. Michael Heatherly, a white male, is Assistant Principal with direct responsibility granted by Pattillo for the elementary school and its 36 teachers. Principal Pattillo has served 10 years as principal of Fairview School while Assistant Principal Heatherly has served there nine years in such supervising capacity. Pattillo was a classroom teacher for six years and on the Central Staff of the defendant board for three years before attaining his principalship. Heatherly served four years as a classroom teacher before becoming Assistant Principal at Fairview. The two men worked well and in close cooperation each with the other in the fulfillment of their administrative and supervisory responsibilities. Principal Pattillo has long followed the policy of granting Assistant Principal Heatherly broad autonomy regarding the supervision of elementary school teachers at Fairview.

6. Jim Boyd, a white male, is the duly elected and acting Superintendent of Education in and for Cullman County, Alabama. He has served continuously in that elected capacity since July 1971. In the matter of employment of teachers in the county school system, including recommendations for rehire of nontenured, nonrenewed teachers, Superintendent Boyd relies substantially on the recommendations of the school principal. With respect to the recommendation for rehire of nontenured, nonrenewed teachers in the elementary division of Fairview School, Principal Pattillo

1. The following facts are found to exist at all times herein pertinent unless the context otherwise indicates.

relies heavily on the recommendation of Assistant Principal Michael Heatherly on elementary school matters.

7. Written evaluations of the elementary school teachers of Fairview School are made two times each school year. One evaluation is made for the first semester and another for the second semester. All such evaluations are made by Assistant Principal Michael Heatherly. The evaluation procedure requires a face-to-face conference between the evaluator and the teacher being evaluated, full disclosure of the evaluation made to the teacher involved, and the signatures of the evaluator and the teacher to the evaluation sheet with date affixed thereto. The written evaluations of each teacher for the first semester are required to be filed in the office of the Principal no later than the first week of the second semester. The teacher evaluations for the second semester are due in the Principal's office no later than the first week following the last day of school.

8. During the second semester of each school year at Fairview at a time predetermined by the Principal all teachers fill out and execute a Teacher Placement Form indicating his or her teaching plans or preference for the succeeding school year, i.e., retirement; transfer; desire to return to the school to which assigned; et cetera. All such executed forms are thereupon submitted to the Office of the Principal for his examination and analysis before being submitted by him in turn to the Office of the County Superintendent of Education, together with the Principal's Recommendations to the County Superintendent described in the next finding of fact.

9. In the spring of each school year, usually in the month of April, Fairview Principal Pattillo prepares and submits in writing to the County Superintendent of Education his Principal's Recommendations concerning the teaching faculty of Fairview School for the succeeding school year. Also accompanying these written recommendations are the Teacher Placement Forms described in the preceding Finding of Fact and the Resignations submitted by the nontenured Fairview teachers, effective as of the close of the current school year in conformity with their one year teaching contracts with the defendant board. Nontenured teachers at Fairview are required to fill out the Teacher Placement Forms along with tenured teachers. In the Principal's Recommendations to the County Superintendent above referenced the words *"Employment Agreement"* are inserted by the name of each nontenured teacher in lieu of the principal's recommendation respecting that teacher. The Court concludes that this procedure is followed respecting nontenured teachers in the county school system because the County Superintendent of Education and the board of education will not have sufficient reliable information concerning state funds for teachers salaries and teacher units for the succeeding school year to enable them to make reemployment decisions concerning their nontenured teachers until middle or late summer following the expiration of the current school year.

10. Plaintiff Teresa Todhunter duly and timely submitted her resignation as a teacher in the employ of the Cullman County Commission on Education in the late spring of 1984 in conformity with the resignation provision of her 1983–84 one year teaching contract and the same was duly and timely accepted by the defendant board. She was not in the employ of the defendant board during the months of June, July and August, 1984.

11. The Chapter I federally funded reading program at Fairview School lost one of its funded teaching units for the 1984–85 school year. For this reason Mrs. Todhunter was not reemployed as a Chapter I reading teacher at Fairview for the second year. Fortunately, however, for her an unexpected resignation of a 6th grade English teacher at Fairview for the purpose of teaching in the City of Cullman School System produced a vacancy in that position. Principal Pattillo contacted Mrs. Todhunter in July 1984 and offered her a one-year contract with standard resignation clause covering such position. She accepted and signed the one-year teaching con-

tract as offered for the school year 1984–85.

12. Mrs. Todhunter served as a 6th grade English teacher ar Fairview for the entire 1984–85 school year with the exception of a few days sick leave necessitated by her miscarriage in the fall semester of 1984. Two of her fellow 6th grade teachers during this particular year were Ellen Humphries (19 years at that school at time of bench hearing, 11 years as 6th grade teacher) and Harold Sharpston (6th grade teacher for 21 years at time of bench hearing, 8 years at Fairview). Each of these three 6th grade teachers during the 1984–85 school year had a homeroom class to which students were due to report at the beginning of each school day no later than 8:00 A.M. which was the time the tardy bell rang. Each such teacher was to the knowledge of each due in his or her homeroom no later than 7:45 A.M. on each school day. Punctuality on the part of the teacher and its importance was repeatedly emphasized by both Principal Pattillo and Assistant Principal Heatherly at the beginning and throughout the school year in teachers' meetings and otherwise. Children bussed to the school each day arrived at the school at approximately 7:30 A.M. each morning and were instructed to promptly report themselves to their respective homerooms. Absence of the homeroom teacher at or in his or her homeroom between 7:45 A.M. and 8:00 A.M. resulted in numerous problems concerning the children assigned to that homeroom and additional problems to the other homeroom teachers who had punctually reported consistent with supervisory direction. To insure and record teacher punctuality a Sign-In-Sheet procedure was formulated and placed in force and effect by the Fairview principals for mandatory daily use by each homeroom teacher in the high school building, grammar school building and the upper elementary building. The Sign-In Sheet procedure was consistently followed at Fairview School for several school years prior to the school year 1984–85. The Sign-In Sheet was prepared for one school week use (with periodic and timely replacement the first day of each school week), was (insofar as this case is concerned) placed in a location in the upper elementary building convenient for the homeroom teachers directly underneath a school clock (on a clipboard) and contained a blank space for the teacher to record thereon each Monday through Friday the time of his or her arrival in the elementary building at the beginning of each school day. This required Sign-In procedure was in force and effect throughout the school years 1983–84 and 1984–85 and was a mandatory requirement for each homeroom teacher. Assistant Principal Heatherly from time to time personally monitored the procedure.

13. During the 1983–84 school year Assistant Principal Michael Heatherly received reports from Teresa Todhunter's supervisor of some failures on Mrs. Todhunter's part to arrive at school punctually at the beginning of the school day.[2] However, these failures to conform to school policy of punctuality by Mrs. Todhunter in her past year of employment did not dissuade him from recommencing her to Principal Pattillo for employment as a 6th grade English teacher when the unexpected vacancy occurred in that position for the 1984–85 school year. However, Assistant Principal Heatherly counseled with Mrs. Todhunter in early September 1984 during her first semester evaluation concerning her late arrivals at school the previous year and the importance of punctuality. He admonished her to work on it and correct it. In response she promised improvement in that area.

14. At the first teachers' meeting prior to commencement of school the principals emphasized to the homeroom teachers the importance of their prompt arrival by 7:45 A.M. each school day. The second faculty meeting of the year at Fairview School was held on November 2, 1984. Teresa Todhunter was in attendance. The principals stressed the necessity of teachers being in

---

2. Since Mrs. Todhunter was a Chapter I reading teacher during the 1983–84 school year, the Court makes no finding that she was a homeroom teacher during that year or that the Sign-In Sheet procedure was applicable to her for this school year.

their homeroom each school day at 7:45 A.M. Assistant Principal Michael Heatherly, who arrived at school about 7:30 A.M. each day, continued to periodically monitor the teachers' Sign-In procedure and their punctuality or tardiness. Shortly following the November 2, 1984 teachers' meeting he observed Mrs. Todhunter arriving late for school on several occasions and checked her entries on the Sign-In Sheet. The month before (October 1984) he received complaints from other elementary school teachers that Teresa Todhunter was frequently late in arriving at school and that her lack of punctuality was working a hardship on the homeroom teachers. Later in the school year he began to make a daily log on Mrs. Todhunter's late arrivals at school and her sign-in practices. In February 1985 he observed her arrival at school one day at 7:51 A.M. and her 7:45 A.M. sign-in entry. He changed that entry himself to the correct time and circled it on the Sign-In Sheet. On April 4, 1985 he personally observed her late arrival at 7:55 A.M. and her 7:45 A.M. sign-in entry for that day. Again, he affixed the correct entry time on the Sign-In Sheet and circled it.

15. Sixth grade teachers Ellen Humphries and Harold Sharpston testified concerning Teresa Todhunter's numerous failures to arrive at school by 7:45 A.M. during the 1984–85 school year in conformity with school policy.

Mrs. Humphries described the 6th grade enrollment as 100 children. She related Mrs. Todhunter's lack of punctuality at the beginning of each school day as almost continuous during the first semester, not as bad during the second but more than one day a week. The Sign-In Sheet in the elementary school building in which she, Todhunter and Sharpston taught 6th grade was close to her homeroom door. She (Humphries) followed a practice of standing in her homeroom door between 7:45 A.M. and 8:00 A.M. and personally and often observed Todhunter's late arrival for school. The first school bell rings at 7:55 A.M. The second bell rings at 8:00 A.M. She told of Mrs. Todhunter's continuous late arrivals at school during the week of October 15–19, 1984 and her practice of signing in at a time earlier than her actual arrival in the building. All that week Mrs. Todhunter arrived at 7:50 A.M. and signed in at 7:40 A.M. on the Sign-In Sheet. Mrs. Humphries was so frustrated at Mrs. Todhunter's actions that she corrected Mrs. Todhunter's incorrect entries for that week on the Sign-In Sheet by writing a "5" and an "0" over Mrs. Todhunter's entries to make the Todhunter entry for each day of that week read 7:50 A.M. instead of 7:40 A.M. She identified that particular Sign-In Sheet and her corrected entries by Mrs. Todhunter's name (Plaintiff's Exhibit 6). Mrs. Humphries reported these late arrival incidents to Assistant Principal Heatherly and her corrective action on the Sign-In Sheet by Mrs. Todhunter's name. She described Mrs. Todhunter's late arrivals at school and her incorrect arrival entries on the Sign-In Sheet as a "joke" among the teachers. The Sign-In Sheets for the Fairview Elementary School for the entire 1984–85 school year were received in evidence as Defendant's Exhibit #5.

Harold Sharpston, 6th grade teacher at the Fairview Elementary School testified. He related that he knew Mrs. Todhunter during her two years of employment at Fairview. Her frequent tardiness in arriving at school at the beginning of the school day was discussed quite freely among the teachers. He told of occasions of Todhunter's arrival at school after his own arrival and of her signing in earlier than he did. Mrs. Todhunter's late arrivals at school continued during the whole 1984–85 school year, according to this witness. He was familiar with Mrs. Todhunter's continuous late arrivals during the October 1984 week described by Mrs. Humphries and observed Mrs. Humphries' frustration and her corrective entries on the Sign-In Sheet by Mrs. Todhunter's name. He testified concerning the additional burden placed on Mrs. Humphries with respect to Mrs. Todhunter's homeroom students caused by Mrs. Todhunter's late arrivals at school.

16. Plaintiff's Exhibit No. 1, being her first semester evaluation (Chapter 1 assignment) for the 1983–84 school year prepared by Assistant Principal Michael Heatherly

dated November 2, 1983 but appearing to have been signed by the evaluator and Mrs. Todhunter on January 2, 1984, was introduced in evidence. In the category of "Instructional Knowledge and Skills" are a number of sub-categories with rating columns of "Satisfactory," "Needs Improvement" and "unsatisfactory" for check mark by the evaluator. Mrs. Todhunter received a rating of "Satisfactory" in all sub-categories, including the sub-category *"Is punctual and regular in attendance."* Under evaluator's comments are the handwriting words: "Mrs. Todhunter displays a willingness to work for the overall school program."

17. Plaintiff's Exhibit No. 2, being her second semester evaluation form (Chapter 1 assignment) for the 1983–84 school year prepared by Assistant Principal Heatherly bearing date of April 16, 1984 but appearing to have been signed by the evaluator and Mrs. Todhunter on May 23, 1984, was introduced in evidence. This exhibit has the identical format as Plaintiff's Exhibit No. 1. All sub-categories were checked "Satisfactory" by the evaluator, including the sub-category *"Is punctual and regular in attendance."* The evaluator made no comments.

18. Plaintiff's Exhibit No. 3, being her first semester evaluation form (Sixth grade assignment) for the 1984–85 school year prepared by Assistant Principal Heatherly bearing Mrs. Todhunter's September 8, 1984 signature and the September 8, 1984 signature of Mr. Heatherly[3] was introduced in evidence. The format of this particular evaluation form is different than the form's used in the 1983–84 school year. Two main categories are listed: "Instructional Knowledge and Skills" with ten sub-categories; and "Professional characteristics" with twelve sub-categories. Each sub-category has three rating columns for check mark by the evaluator: "O" for "Outstanding"; "S" for "Satisfactory"; and "U" for "Unsatisfactory". Mrs. Todhunter received an "Outstanding" rating

in every sub-category for "Instructional Knowledge and Skills" except the sub-category entitled "Knows, uses and cares for instructional material and equipment" for which she received a "Satisfactory" rating. She received an "Outstanding" rating in every sub-category for "Professional characteristics" except the sub-category *"Is punctual in time of arrival to school and departure from school"* for which she received an "Unsatisfactory" rating and except for the sub-category "Continues personal professional relationships with associates, parents and public" for which she received a "Satisfactory" rating.

19. Plaintiff's Exhibit No. 4, being her second semester evaluation form (Sixth grade assignment) for the 1984–85 school year prepared by Assistant Principal Heatherly bearing date of June 1, 1984 (admitted error, correct date is June 1, 1985) was introduced in evidence. This evaluation form is in the same format as Plaintiff's Exhibit No. 3. Mrs. Todhunter's second semester evaluation by her Assistant Principal shows a diminution in his professional opinion of her professional performance as 6th grade English teacher at the Fairview Elementary School during the second half of the 1984–85 school year. She received in this second semester evaluation a single "Outstanding" rating in the sub-category of "Maintains effective classroom management/discipline" in the category of "Instructional Knowledge and Skills." She received a "Satisfactory" rating in all other sub-categories of "Instructional Knowledge and Skills" and "Professional characteristics" including *"Is punctual in time of arrival to school and departure from school,"* a sub-category of "Professional characteristics."

There is testimony in the record that prior to his second semester evaluations Assistant Principal Heatherly had been told (presumably by the Principal) that he had been giving too many "Outstanding" ratings in his teacher evaluations for that

---

**3.** Mrs. Todhunter disputes that this evaluation was conducted on September 9, 1984 and places the actual date of evaluation as sometime in December of that year. Assistant Principal Heatherly, however, was adamant in his testimony that the evaluation was conducted on September 8, 1984 or a day or so later.

year. Assistant Principal Heatherly testified with respect to Mrs. Todhunter's second semester recommendation that he (Heatherly) on the suggestion or advice of Principal Pattillo rated Mrs. Todhunter "Satisfactory" on all sub-categories on the evaluation form for the second semester so as not to hinder her from getting employment elsewhere for the 1985–86 school year [See Finding of Fact # 25, infra, for finding of fact concerning Pattillo's and Heatherly's conference of February 22, 1985 in the Principal's office wherein they agreed following Heatherly's recommendation that Pattillo would not recommend Mrs. Todhunter for rehire at Fairview School for the succeeding school year].

20. In January 1985 Teresa Todhunter and her husband made plans to buy a home. For this reason she needed the assurance of job security and explained her situation and job security concern to Assistant Principal Michael Heatherly who, according to Mrs. Todhunter's testimony, responded that "he saw no problem." Mrs. Todhunter further testified that she made the same inquiry to her Assistant Principal in April and May 1985. She described his response on each occasion to be the same as the response he gave to her January 1985 inquiry.

21. On or about January 22, 1985 Real Estate Financing, Inc. of Decatur, Alabama submitted to the Cullman County Board of Education a Request For Verification of Employment of Teresa Todhunter on a Federal National Mortgage Association preprinted form with pertinent information inserted by typewriter. The form obviously informed the recipient board that Mrs. Todhunter was applying for a real estate mortgage loan. The Employment Data section of that form sought applicant's date of employment, present position and probability of continued employment. Other sections of the form sought current base pay of applicant, year to date earnings and past year earnings. (Plaintiff's Exhibit 7). On or about February 14, 1985 County Superintendent of Education Jim Boyd returned the executed verification form to Real Estate Financing, Inc. by United States mail, together with his transmittal letter dated February 14, 1985 (Plaintiff's Exhibit 7). The executed Employment Data section of the completed form showed applicant's date of employment as 9/12/83; her present position as "teacher" and "good" for *"Probability of Continued Employment."*

22. Teresa Todhunter was pregnant when school started in the 1984–85 school year on August 16th or 17, 1984 and promptly communicated this fact to the Fairview School principals. On September 22, 1984 she had a miscarriage and was unable to work for five school days. There is no evidence in this record of adverse reaction or adverse treatment on the part of either principal or on the part of the defendant board of education or on the part of the County Superintendent of Education to this pregnancy or to Mrs. Todhunter's miscarriage.

23. Mrs. Todhunter began selling decorator crystal for extra income in the middle of April 1984. There is evidence in this record that she thereafter used the school's photocopying machine and the school's copy paper in connection with one or more of her business promotions. She was mildly reprimanded for this incident by Assistant Principal Heatherly and offered to pay the school for the cost of the paper used. The Court does not attribute significance to this item of evidence in its resolution of the issues in the case.

24. Assistant Principal Michael Heatherly testified that he had observed the classroom performance of Mrs. Todhunter during the 1984–85 school year. On the basis of such observation he rated her classroom performance during the first part of the school year as good and her classroom performance thereafter as "appearing that not much instruction or teaching was going on." He added that he saw the latter described performance by Mrs. Todhunter "quite a bit."

25. Assistant Principal Heatherly recounted to the Court a "late arrival at school" incident involving Teresa Todhunter on the morning of February 22, 1984 which he personally observed and which

prompted him to promptly confer with Principal Pattillo. On this occasion Mr. Heatherly watched Mrs. Todhunter drive in the school parking area at 7:51 A.M. She thereupon entered the building and signed in at 7:45 A.M. on the Sign-In Sheet. Mr. Heatherly left his vantage point, walked up to the Sign-In Sheet, changed Mrs. Todhunter's time of arrival at school on that day to read 7:51 A.M. and circled that corrected entry. He then took the Sign-In Sheet to Principal Pattillo, showed it to him and told Pattillo what he had observed with his own eyes and what he had done to correct Mrs. Todhunter's incorrect time of arrival entry on that day. He recounted to the Principal Mrs. Todhunter's repeated infractions of the school's policy of punctuality for homeroom teachers arriving at school by 7:45 A.M. each morning and thereupon recommended to Principal Pattillo that Mrs. Todhunter not be rehired at Fairview School for the 1984–85 school year. The evidentiary record shows that Assistant Principal Heatherly had talked several times with Principal Pattillo regarding Mrs. Todhunter's late arrivals for school. The evidence is clear and convincing that the two school administrators *as of that date* mutually agreed that Mrs. Todhunter would not be recommended by the Principal of Fairview School for rehire for the succeeding school year. Assistant Principal Heatherly concedes that he never discussed his recommendation with Mrs. Todhunter. The Court finds that as of latter February 1985 Mrs. Todhunter was not herself aware that she was pregnant.

26. Mrs. Todhunter testified that she found out she was pregnant again (three months) on March 15, 1985 and communicated this fact to Principal Pattillo and Assistant Principal Heatherly on March 18, 1985. While this particular date for their notification of Mrs. Todhunter's second pregnancy is not directly admitted or directly verified by the testimony of the two principals, the Court is satisfied and finds that Pattillo and Heatherly both were made aware of Mrs. Todhunter's second pregnancy no later than late March 1985. Mrs. Todhunter related that Mr. Heatherly on this occasion congratulated her and wished her better luck "this time" and that Principal Pattillo's verbal response was "well, we'll see." Mrs. Todhunter further testified that on this March 18, 1985 occasion she told the two principals that her due date was the latter part of August and that she would be out of school a minimum amount of time. The evidence shows without contradiction that Mrs. Todhunter started to wear maternity clothes on March 18, 1985 and that she was visibly pregnant at the end of the 1984–85 school year. There is no evidence that Mrs. Todhunter's second pregnancy in 1985 affected her ability to perform her 6th grade teaching duties during the 1984–85 school year. She was out of school for approximately six working days due to her 1984 short pregnancy. Teresa Todhunter's child was actually born on September 24, 1985.

27. Subsequent to the February 22, 1985 conference between Assistant Principal Heatherly and Principal Pattillo at which the two men agreed that Mrs. Todhunter would not be recommended by the Principal for rehire at Fairview School for the 1985–86 school year, Principal Pattillo met with the Fairview School Trustees on a Sunday afternoon in the high school library. The date was April 21, 1985. All of the Trustees (Stanley Dunn, Damon Carter and Kenneth Weldon) except Trustee Kenneth Weldon (a lawyer) were present. School Board Member Fletcher (who represented the School District in which Fairview School was located) was also present. Principal Pattillo shared with the Trustees and Board Member Fletcher the decision which he and Mr. Heatherly had previously reached in February for the Fairview Principal not to recommend Mrs. Todhunter for rehire at Fairview School for the 1985–86 school year. While the evidence is not clear on the point, at least one Trustee (Weldon) was dissatisfied with Mrs. Todhunter's status as a teacher at Fairview School, principally because of an alleged unfair grading incident involving Mrs. Todhunter and Mr. Weldon's 6th grade son. Trustee Weldon so testified at the final bench hearing and told of his communication of his displeasure to Mr. Pattillo but

appeared reluctant to be candid with the Court respecting his reasons for his apparent dislike of Mrs. Todhunter as a teacher. The evidentiary record does not show that any of the other Trustees or Mr. Fletcher exerted or sought to exert any influence or pressure on Principal Pattillo to get rid of Mrs. Todhunter but Trustee Weldon may well have. In any event the Court does not consider that this Trustee's meeting or Trustee Weldon's apparent dislike of Mrs. Todhunter or his communication of that fact to Mr. Pattillo or his effort to influence Mr. Pattillo against Mrs. Todhunter played any appreciable part in Teresa Todhunter not being recommended by Principal Pattillo for rehire at Fairview School for the 1985–86 school year. It is, of course, possible or likely that these facts put "icing on the cake." One thing is certain, however. None of these facts show or tend to show that Mrs. Todhunter was not rehired at Fairview School for the 1985–86 school year because she was pregnant.

28. On April 5, 1985 Assistant Principal Heatherly secured Mrs. Todhunter's signature to the school board required resignation form in conformity with her one year employment contract for the 1984–85 school year, effective as of the end of such school year on June 1, 1985. He testified that on this occasion he orally notified Mrs. Todhunter that she would need to obtain employment elsewhere if Dale Tidwell, a tenured male teacher and assistant principal at Cold Springs School, elected to transfer to Fairview School as a 6th grade teacher. Mr. Tidwell had previously communicated to Pattillo and possibly also to Heatherly that he wanted to step down from his assistant principalship and return to full time teaching at Fairview School. The defendant board of education thereafter timely "accepted" Mrs. Todhunter's submitted resignation. (Defendant's Exhibit No. 3). Consequently, on the day following the last day of school in the 1984–85 school year Mrs. Todhunter's employment by the defendant board of education came to a close.

29. Also on April 5, 1985 Teresa Todhunter executed the Teacher Placement Form required of all teachers in the county system (Plaintiff's Exhibit No. 5) indicating thereon her answer "yes" to the question: "Do you plan to teach in this school system next year"? Without dispute this particular form was routinely forwarded by Principal Pattillo to the County Superintendent of Education along with his Principal's Recommendations (Plaintiff's Exhibit No. 9) dated April 25, 1985. As previously noted beside the names of the four nontenured teachers at Fairview School for the 1984–85 school year (including Teresa Todhunter) the Principal's Recommendations (Plaintiff's Exhibit No. 9) had the words typed in caps *"EMPLOYMENT AGREEMENT"* across the columns *"Does the teacher wish to return"*? and *"Principal's Recommendations."* In the column designated "Principal's Recommendation" were spaces designated *"Return"* and *"Not Return."* Neither space was checked on Plaintiff's Exhibit No. 9 beside Mrs. Todhunter's name nor by the name of any other nontenured teacher at Fairview School.

30. Fairview School Principal Pete Pattillo had little contact with Teresa Todhunter during her two years of employment at that school. His version of the principal-teacher relationship between them is best described by his testimony that Principal Heatherly "was her supervisor." The Court has previously noted that Pattillo and Heatherly had been associated as school administrators at Fairview for a number of years before Mrs. Todhunter came on the scene and that Pattillo had long followed the policy of granting his Assistant Principal broad autonomy regarding the Fairview Elementary School teachers. Pattillo had no personal knowledge of the Sign-In Sheets of Mrs. Todhunter but explained "we try to monitor check-in times." He recalled that he and Heatherly talked several times about Heatherly's complaints concerning Mrs. Todhunter's late arrivals at school and described Heatherly as being unhappy with her overall performance. He further recalled that Heatherly recommended in the latter part of February 1985 that Mrs. Todhunter not be rehired at Fairview for the succeeding school year. He related that by the last of

February 1985 he had made up his mind about Mrs. Todhunter. Principal Pattillo testified flatly that he did not discuss with Mrs. Todhunter at any time during her second year of employment at Fairview her reemployment status or her prospects for being rehired for the 1985–86 school year. He did testify that he called Mrs. Todhunter on July 3, 1985 and told her that a tenured teacher from Cold Springs School who taught the 6th grade would be transferred to Fairview School for the 1985–86 school year and that she should look for other employment. He did not recall any conversation with her after that date. He did recall that during his July 3, 1985 phone conversation with Mrs. Todhunter she asked him for a recommendation. Heatherly thereafter drafted the recommendation which he and Heatherly signed. (Defendant's Exhibit No. 4). The second and third paragraphs of this recommendation dated July 5, 1985 read:

Mrs. Todhunter's re-employment is uncertain at this time due to a restruction of teacher units in Cullman County.

During the past two years at Fairview Mrs. Todhunter performed her duties in a satisfactory manner. Her strong points were discipline and rapport with her students.

31. Mrs. Todhunter remembers her July 3, 1985 phone conversation with Principal Pattillo somewhat differently than he does. She recalls that Mr. Pattillo told her on that occasion that Fairview School had lost a teacher unit for the 1985–86 school year and that "they" were going to have to transfer a tenured teacher from another school to fill the position which she had occupied. Previously, Mrs. Todhunter had heard about the possibility of Fairview losing a teacher unit. She testified that Mr. Pattillo in this July 3rd conversation said he would "keep his eyes open for her" and would give her a recommendation to enable her to obtain employment in another system.

32. Teresa Todhunter testified that she also called Dennis Adams, a member of the defendant school board, on July 3, 1985, as well as Assistant Principal Heatherly, to express her desire for reemployment in the Cullman County School System for the 1985–1986 school year. She states that she also contacted Trustee Weldon and made one unscheduled and unsuccessful visit to the school board office in an effort to talk to the County Superintendent. She admits that she never called and asked for an appointment with the County Superintendent.

33. From and after the last actual school day (June 1, 1985) of the 1984–85 school year Teresa Todhunter no longer had employment with the defendant school board and occupied the status under Alabama law as a nontenured, nonrenewed former teacher in the Cullman County School System.

34. August 21, 1985 was the first day of school for the school children enrolled in the Cullman County School System for the 1985–86 school year. This first school day produced an "overload" of children for the third grade at Fairview School caused by an enrollment of 38 or 40 third grade students. Assistant Principal Heatherly promptly reported the overload to Principal Pattillo with the suggestion that the Principal promptly request of the County Superintendent of Education that he recommend to the school board an emergency allocation of an additional teacher unit for Fairview for the current school year. Pattillo told Heatherly to wait a day or so for the purpose of confirming up the overload. This lapse of time produced no diminution in the third grade enrollment. Principal Pattillo thereupon called Superintendent Jim Boyd (August 23rd or 24th) who told him he would present it to the board and suggested that Pattillo in the meantime be thinking about the person he wished to recommend for the job.

35. Pattillo immediately had a person in mind for the emergency third grade teaching unit, Rhonda Kelley who had graduated from Fairview School slightly over four years before. She was a brand new college graduate with no teaching experience but was eligible for all requisite elementary school certification. Miss Kelley had been interviewed by Pattillo early in the summer

of 1985. He promptly made known his candidate for the position to his Assistant Principal who apparently responded with some interest.

36. A few days before the County Superintendent presented his recommendation to the defendant board of education for the emergency teacher unit allocation to Fairview School Teresa Todhunter learned through reading a local newspaper of the fact of the third grade overload at Fairview and of the possibility of the board authorizing an additional teacher unit at the school by reason thereof. Mrs. Todhunter promptly called Assistant Principal Heatherly and made known her keen interest in securing this third grade teaching position if it was authorized. He replied he would have to talk with Pattillo. Mr. Heatherly testified that after receiving Mrs. Todhunter's call he and Pattillo did talk. He testified: "We had decided in the second semester we didn't want her (Todhunter) back." The two principals thereafter jointly interviewed Miss Kelley and decided to hire her if the school board authorized her employment. No other interviews were conducted for this third grade teaching position. Mr. Heatherly testified that he and Pattillo reviewed Miss Kelley's resume in the pre-interview process. Pattillo told Heatherly that Miss Kelley was an outstanding student in high school. Kelley had a good college record. Pattillo testified that he did not consider Mrs. Todhunter for the position. Both Heatherly and Pattillo testified positively that Mrs. Todhunter's pregnancy had nothing to do with their decision not to recommend her for rehire at Fairview for the 1985–86 school year.

37. Rhonda Kelley was offered the Fairview third grade teaching position by Principal Pattillo prior to the County Superintendent's recommendation to the school board that she be employed. On August 27, 1985 Miss Kelley executed the usual Employment Agreement as of that date accepting employment with the Cullman County School System as an elementary teacher at Fairview School effective September 3, 1985 for the 1985–86 school year on a temporary basis. The Employment Agreement contained the standard clause that she would tender her resignation at the end of the 1985–86 school year. (Defendant's Exhibit No. 7). On August 30, 1985 the Cullman County Commission on Education in regular meeting assembled unanimously voted to authorize the appointment of Rhonda Kelley as a teacher at Fairview School for the 1985–86 school year, effective September 3, 1985, under Employment Agreement on the recommendation of Jim Boyd, County Superintendent of Education. (Defendant's Exhibit No. 6).

38. There is no evidence in this record that either Principal Pete Pattillo, Assistant Principal Michael Heatherly or County Superintendent Jim Boyd made any recommendation that Teresa Todhunter not be reemployed in the Cullman County School System for the 1985–86 school year or that the Cullman County Commission on Education affirmatively voted not to rehire her. Moreover, there is no evidence in this record warranting a finding of fact or a factual inference that either the County Superintendent of Education or the defendant school board or its members were aware of Teresa Todhunter's desire to secure employment as a third grade teacher at Fairview School in August 1985 or of her communication of such fact to Assistant Principal Michael Heatherly after the commencement of school in the 1985–86 school year and before Rhonda Kelley was employed for that position.

39. The decision of Principal Pattillo and Assistant Principal Heatherly not to consider Teresa Todhunter for the third grade teaching position at Fairview School in August 1985 was dictated solely by their respective dissatisfaction as school administrators with her teaching performance in the 6th grade at Fairview during the 1984–85 school year which produced their joint decision of late February 1985 not to recommend her rehire for the 1985–86 school year. Moreover, the evidence in this record is strong and persuasive that: (1) the August 1985 failure of these two Fairview School principals to recommend Teresa Todhunter for this Fairview third grade teaching position; (2) the fact that the

County Superintendent of Education did not recommend Mrs. Todhunter to the board for employment in the third grade position at Fairview School; and (3) the fact that the defendant board of education did not vote to employ Mrs. Todhunter for this third grade position for the 1985–86 school year had nothing whatsoever to do with Mrs. Todhunter's pregnancy. Simply put, the evidence here is clear and convincing and the Court finds that there has been no pregnancy discrimination against Teresa Todhunter by the Cullman County Commission on Education by and through its members or by and through its County Superintendent of Education or by and through Fairview School Principal Pete Pattillo or by and through Fairview School Assistant Principal Michael Heatherly or otherwise.

40. The Court finds the testimony of Teresa Todhunter to be credible or "believable" with the exception of that part of her testimony which in essence denies her persistent pattern of late arrival at school for the 1984–85 school year and that part which places her first semester evaluation by Heatherly for the 1984–85 school year as being the last week before Christmas or the first week after Christmas instead of early September 1984 as indicated on Plaintiff's Exhibit No. 3 and by Heatherly's testimony. The Court does not find these designated portions of Mrs. Todhunter's testimony to be believable and has not accepted such testimony as true in its assessment of the evidence regarding the performance of her teaching duties and responsibilities in the second year of her employment. The Court has given substantial weight to that part of her testimony which the Court has found to be credible.

41. The Court has ascribed full credibility or believability to the testimony of Assistant Principal Michael Heatherly in this case in its assessment of the evidence and has given much weight to his testimony in connection with the findings of fact set out above which involve his administrative/supervisory activities at Fairview School, including his principal-teacher relationship with Mrs. Todhunter during the 1984–85 school year.

From its close observation of all parties and witnesses who took the stand during the final hearing; their manner of testifying; their interest (if any) in the outcome of the case; their opportunity to observe or acquire knowledge concerning the facts about which they testified; their candor, fairness and intelligence; and the extent to which each of them has been supported or contradicted by other credible evidence, the Court concludes that Mr. Heatherly is the "pick of the lot."

42. Moreover, the Court finds the testimony of Fairview Principal Pete Pattillo to be credible or "believable" and has given significant weight to his testimony. However, it is clear that his administrative decisions concerning Teresa Todhunter were substantially influenced by the opinions and recommendations of his Assistant Principal. However, the Court believes and finds that the joint decision of Pattillo and Heatherly to recommend the employment of Rhonda Kelley for the third grade teaching position at Fairview School for the 1985–86 school year was largely Pattillo's.

43. The joint letter of recommendation of Principal Pattillo and Assistant Principal Heatherly dated July 5, 1985 (Defendant's Exhibit No. 4) written on behalf of Teresa Todhunter (at her request) saying in pertinent part that her reemployment was *uncertain* at that time due to a reduction of teacher units in Cullman County and that she had performed her duties in a satisfactory manner during her two years at Fairview School *was written at a time after both principals had jointly decided in February 1985 not to recommend Mrs. Todhunter for rehire in the succeeding school year.* The Court finds and determines that this letter of recommendation was written by the two principals for the actual and sincere purpose of assisting Mrs. Todhunter in securing employment in another school system because of the firm conviction of the two men that the Cullman County Superintendent of Education would not recommend to the school board Mrs. Todhunter's return to Fairview School over the objections of its two principals.

With reference to preceding Finding of Fact No. 20, the January 1985 response of Assistant Principal Heatherly to Teresa Todhunter made following her inquiry and concern over her job security was made in good faith. Had Mrs. Todhunter improved her job performance thereafter instead of allowing it to further deteriorate she may well have remained at Fairview until this date.

Preceding Finding of Fact No. 21 dealing with the County Superintendent's verification of Mrs. Todhunter's employment by the Cullman County School System to Real Estate Financing, Inc. on or about February 14, 1985 and showing her probability of continued employment as "good" is wholly insufficient to create a resulting factual inference of adverse employment action against Mrs. Todhunter by the defendant board of education because of her pregnancy arising from the board's late August 1985 action in appointing Rhonda Kelley to the third grade teaching position at Fairview School.

44. The Court further finds the testimony of Ellen Humphries and Harold Sharpston to be fully credible or "believable" and has given substantial weight to the testimony of both witnesses on the issue of Mrs. Todhunter's alleged late arrival at school on numerous occasions during the 1984–85 school year.

45. The Court does not consider that the testimony of Trustee Kenneth Sheldon has any significance in the determination of the issues in the case.

46. The testimony of County Superintendent of Education Jim Boyd has been accepted by the Court as fully credible to be accorded substantial weight with knowledge that behind the "good ole boy" facade of this witness lurks an astute and shrewd school administrator. Any county superintendent of education in the State of Alabama who stays continuously in office as long as Jim Boyd has held his position in Cullman County is not "a good ole boy" within the true meaning of that phrase.

47. Had Teresa Todhunter been employed as a third grade teacher at Fairview School in the Cullman County School Sys-tem for the 1985–86 school year her annual salary would have been $18,252.00. For the school year 1986–87 her annual salary would have been $20,172.00. The Court finds from the evidence that Teresa Todhunter made reasonable and diligent continuous effort to secure teaching employment in other Alabama public school systems and in Alabama private schools from late August 1985 to the time of the final bench hearing. These efforts resulted in her teaching employment by the Morgan County School System from January 13, 1986 to the end of May 1986 for which she received $9,000.00 and other teaching employment by the Cristian Park Christian School in Jefferson County in its 5th grade from August 1986 until May 1987 for which she received $10,300.00. She and her family are moving to Helena, Alabama in August of this year. Mrs. Todhunter will be employed by the Shelby County School System in its Thompson Middle School for the 1987–88 school year. From late August 1985 until the final bench hearing Mrs. Todhunter was otherwise unemployed.

48. Most of the nontenured teachers in the Cullman County School System who "resigned" prior to the actual close of the 1984–85 school year effective June 1, 1985 and thus occupied the status of nontenured, nonrenewed teachers under Alabama law from and after the actual close of school on June 1, 1985 were subsequently reemployed for the 1985–86 school year by the defendant school board upon the recommendation of the County Superintendent of Education.

## CONCLUSIONS OF LAW

1. The Court has subject matter jurisdiction of this Title VII pregnancy discrimination civil action under 28 U.S.C. § 1343(4) and 42 U.S.C. § 2000e–5(f)(3). Personal jurisdiction and venue are not contested.

2. Plaintiff's Position is stated in ¶ 5(b) of the Pretrial Order herein entered on June 9, 1987 as follows:

*It is the plaintiff's contention that the true reason for the failure to renew*

*her is that she was pregnant and due to deliver near the beginning of the 1985–86 school year.*

However, plaintiff's pregnancy discrimination claim for relief tried to the Court was the alleged failure of the school board because of her pregnancy to employ her as a third grade teacher at Fairview School in late August 1985 following the enrollment overload of third grade children at Fairview during the first week of the 1985–86 school year. This alleged discriminatory act, according to the undisputed evidence, occurred almost three months after Mrs. Todhunter's second nonrenewal. The Pretrial Order is accordingly deemed so AMENDED and MODIFIED.

■ 3. On October 31, 1978 President Carter signed into law the PREGNANCY DISCRIMINATION ACT (Pub.L. 95–955), 42 U.S.C. § 2000e(k). The Act is an amendment to Title VII of the Civil Rights Act of 1964 which prohibits, among other things, discrimination in employment on the basis of sex and was the reaction of Congress to *General Electric Co. v. Gilbert,* 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976), which held that differentiation of pregnancy benefits from other benefits did not violate Title VII because it was not gender-related but condition-related. The Pregnancy Discrimination Act makes it clear that "because of sex" or "on the basis of sex," as used in Title VII, includes "because of or on the basis of pregnancy, childbirth, or related medical conditions. Therefore, Title VII prohibits discrimination in employment against women affected by pregnancy or related conditions.[4]

■ 4. 42 U.S.C. § 2000e–2(a)(1) provides in pertinent part:

(a) It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's ... sex;

Generally, the standards of proof in a case claiming discrimination on the basis of pregnancy are the same as in other cases of sex discrimination. *Hayes v. Shelby Memorial Hospital,* 726 F.2d 1543, 1547 (11th Cir.1984).

■ 5. The provisions of Title VII have been interpreted as allowing an employer's vicarious liability for the discriminatory acts of its supervisory personnel. 42 U.S.C. § 2000e(b) defines "employer" to include any agent of the employer. Jim Boyd, Keith Pattillo and Michael Heatherly in their respective administrative capacities were each agents of the defendant school board at all times pertinent to this action for Title VII purposes. *Gay v. Board of Teamsters of San Jacinto College,* 608 F.2d 127 (5th Cir.1979).[5] See *Hamilton v. Rogers,* 791 F.2d 439, 442 (5th Cir.1986). Moreover, the defendant school board has not raised or argued this issue.

■ 6. The most often used test for determining whether a plaintiff has proved a *prima facie* case of discrimination was set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668

---

**4.** The Act became effective on October 31, 1978, except that with respect to fringe benefit programs in effect on that date, the Act took effect 180 days thereafter, that is, April 29, 1979. To the extent that Title VII already required employers to treat persons affected by pregnancy-related conditions the same as persons affected by other medical conditions, the Pregnancy Discrimination Act does not change employee rights arising prior to October 31, 1978 or April 29, 1979. Most employment practices relating to pregnancy, childbirth and related conditions—whether concerning fringe benefits or other practices—were already controlled by Ti-

tle VII prior to the Act. For example, Title VII has always prohibited an employer from firing, or refusing to hire or promote, a woman because of pregnancy or related conditions, and from failing to accord a woman on pregnancy-related leave the same seniority retention and accrual accorded those on other disability leaves. See 29 C.F.R. § 1604, App. (1986).

**5.** The Eleventh Circuit, in the en banc decision *Bonner v. City of Pritchard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

(1973),[6] and reaffirmed by the Supreme Court in *Cooper v. Federal Reserve Bank*, 467 U.S. 867, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984). The order of proof set forth in *McDonnell Douglas* is applicable to failure to hire cases "because of" the pregnancy of the applicant. *Hayes*, 726 F.2d at 1547. Thus, in the present case the plaintiff Teresa Todhunter had the burden of proving by a preponderance of the evidence that she was a member of the protected class (pregnant females), that she applied for and was professionally qualified for a teaching position in the Cullman County School System for which the Cullman County Commission on Education was then seeking applicants (in this instance the position of third grade teacher at Fairview School in August 1985), that despite her professional qualifications for the third grade teaching position at Fairview she was rejected, and that after her rejection the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

■ If the court concludes that the plaintiff has proved a *prima facie* case by a preponderance of the evidence, then the court must consider, if offered, defendant's explanation of or justification for the presumptively discriminatory action. In a disparate treatment case, as we have here, the defendant in order to meet its burden of production (not burden of proof) must articulate by admissible evidence a legitimate nondiscriminatory reason for its employment decision but it need not show that it was actually motivated by the proferred reason. See, e.g., *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254-255, 101 S.Ct. 1089, 1094-95, 67 L.Ed.2d 207 (1981); *Furnco Const. Corp., v. Waters, supra*. Finally, if the defendant carries its burden of production above referenced, the plaintiff must then prove by a preponderance of the evidence that the legitimate reason offered by defendant was merely a pretext for discrimination. *Bur-*

*dine*, 450 U.S. at 252-253, 101 S.Ct. at 1093. See *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590 (11th Cir.1987). As in any lawsuit, the plaintiff may prove his case by direct or circumstantial evidence. The trier of fact should consider all of the evidence, giving it whatever weight and credence it deserves. *U.S. Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, n. 2, 103 S.Ct. 1478, n. 2, 75 L.Ed.2d 403 (1983).

■ 7. Based upon the evidence presented by Teresa Todhunter, the Court concludes that she established by a preponderance of the evidence a "bare bones" prima facie case based upon her pregnancy condition. This finding and conclusion is based on the evidence that in late August 1985 she was female and pregnant, that she applied for and was professionally qualified for the third grade teaching position at Fairview School in the Cullman County School System which began after school started for the 1985-86 school year, that despite her qualifications for the teaching position she was rejected, and that after her rejection the position remained open and the school board continued to seek applicants from persons of Mrs. Todhunter's qualifications.

■ 8. The defendant Cullman County Commission on Education in conformity with its burden of production thereafter articulated by admissible evidence its legitimate, nondiscriminatory reason for not employing Teresa Todhunter as a third grade teacher at Fairview School for the remainder of the 1985-86 school year following the overload occasioned by third grade students enrolling at Fairview during the first week of school. This articulation came in the form of clear and convincing evidence that Mrs. Todhunter's performance as a 6th grade teacher at Fairview School from August 1984 to latter February 1985 had been adjudged deficient by Fairview Principal Keith Pattillo and Assistant Principal Michael Heatherly to

---

**6.** A *McDonnell Douglas* prima facie showing is "proof of actions taken by an employer from which we infer discriminatory animus because experience has proved that in the absence of any other explanation it is more likely than not

those actions were bottomed on inpermissible considerations." *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978).

such an extent that Pattillo and Heatherly jointly agreed in their respective administrative and supervising authorities at Fairview School in latter February 1985 that Principal Pattillo would not thereafter recommend her for rehire at Fairview for the 1985–86 school year. Given the fact that Mrs. Todhunter herself did not know she was pregnant in late February 1985, the Court assumes that able counsel for this former Cullman County School System teacher will concede that the undisputed evidence shows that the two principals did not have knowledge of Mrs. Todhunter's pregnancy at that time. Moreover, the defendant school board further articulated by admissible and clear and convincing evidence that Assistant Principal Heatherly's subsequent failure as Principal of the Elementary School at Fairview in late August 1985 to recommend Mrs. Todhunter to Principal Pattillo for employment as a third grade teacher at Fairview for the remainder of the 1985–86 school year and Principal Pattillo's failure thereafter in late August 1985 to recommend Mrs. Todhunter to the County Superintendent of Education of Cullman County for employment as a third grade teacher at Fairview for the remainder of the 1985–86 school year was the direct product and confirmation of the above referenced joint decision of the two principals made in latter February 1985 and that Mrs. Todhunter's pregnancy then known by both principals simply played no part in the confirmation of their earlier decision. The Court concludes that the defendant Cullman County Commission on Education has thereby rebutted Mrs. Todhunter's prima facie case.

9. While Teresa Todhunter offered evidence in the final bench hearing that the above referenced articulations of the defendant school board were pretextual, the Court finds and determines from this evidentiary record and holds that Mrs. Todhunter has wholly failed to prove by a preponderance of the evidence that the legitimate, nondiscriminatory reasons articulated by defendant for its failure to employ Mrs. Todhunter as a third grade teacher at Fairview were indeed pretextual. This issue, in the last analysis, in large part becomes one of credibility as between Mrs. Todhunter on the one hand and Principals Heatherly and Pattillo on the other, taking into account the other collateral evidence which tends directly and/or inferentially to support one side of that credibility issue or the other. Having given due weight to all of the evidence as heretofore noted and in making the credibility determinations hereinabove referenced, the Court concludes and holds that Mrs. Todhunter's pregnancy in late August 1985 was not a factor in the defendant school board's late August 1985 failure to employ her as a third grade school teacher at Fairview for the remainder of the 1985–86 school year. Phrased otherwise, Mrs. Todhunter has not been the victim of sex discrimination at the hands of the Cullman County Commission on Education because she was pregnant in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

10. The Court is not unmindful of the admonition of the Supreme Court given in *United States Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 714–715, 103 S.Ct. 1478, 1481–82, 75 L.Ed.2d 403 (1983):

[W]hen the defendant fails to persuade the district court to dismiss the action for lack of a prima facie case, and responds to the plaintiff's proof by offering evidence of the reason for the plaintiff's rejection, the factfinder must then decide whether the rejection was discriminatory within the meaning of Title VII. At this stage, the *McDonnell [-Burdine] Douglas* presumption "drops from the case," 450 U.S. at 255, n. 10 [101 S.Ct. at 1095, n. 10], and "the factual inquiry proceeds to a new level of specificity." *Id.* at 255 [101 S.Ct. at 1095]. After Aikens presented his evidence to the District Court in this case, the Postal Service's witnesses testified that he was not promoted because he had turned down several lateral transfers that would have broadened his Postal Service experience (citations to the record omitted). The District Court was then in a position to decide the ultimate factual issue in the case.

This quoted admonition is easier to read than it is to follow. At times use of the prima facie method established in *McDonnell Douglas,* even in a case where the court is authorized to directly proceed to the specific question of discrimination animus, is helpful to the court. In any event, the Court now states the ultimate "factual inquiry" in this Title VII pregnancy discrimination case to be "[whether] the defendant intentionally discriminated against the plaintiff because of her pregnancy"? The Court's answer and holding is "NO."

Any of the foregoing conclusions of law which constitute findings of fact are hereby adopted by the Court as findings of fact. Any of the foregoing findings of fact which constitute conclusions of law are hereby adopted by the Court as conclusions of law.

An appropriate Order will be entered in favor of the defendant school board in confirmity with the Court's Findings of Fact and Conclusions of Law.

ORDER

In conformity with the findings of fact and conclusions of law dictated into the record at the close of all of the evidence in the final bench hearing in the above entitled civil action pursuant to Rule 52(a), Fed.R.Civ.P., as supplemented by the additional and supplemental findings of fact and conclusions of law entered contemporaneously herein, it is

ORDERED, ADJUDGED and DECREED that plaintiff TERESA TODHUNTER have and recover NOTHING of the defendant CULLMAN COUNTY COMMISSION ON EDUCATION in the above entitled civil action, that final judgment is hereby RENDERED and ENTERED in this case in favor of defendant and against plaintiff and that the costs herein are taxed against plaintiff, for which let execution issue.

The Court hereby expressly determines that there is no just reason for delay in entry of final judgment in this action and hereby certifies that the within order is entry of final judgment in favor of defend-ant and against plaintiff, all pursuant to Rule 54(b), Fed.R.Civ.P.