17 F.Supp.2d 1048 (1998)
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,
v.
MCDONNELL DOUGLAS CORP., Defendant.
No. 4:95CV1414 (SNL).
United States District Court, E.D. Missouri, Eastern Division.
August 20, 1998.
*1049 Robert G. Johnson, C. Felix Miller, Jr., S. Robert Royal, Supv Trial Atty, Alice M. Craft, EEOC, St. Louis, MO, for Equal Employment Opportunity Commission, plaintiff.
Michael P. Burke, Thomas E. Wack, Ann B. Davis, Bryan Cave L.L.P., St. Louis, MO, for McDonnell Douglas Corporation, defendant.

MEMORANDUM AND ORDER
LIMBAUGH, District Judge.
This matter is before the Court on defendant McDonnell Douglas Corporation's (MDC) motion for summary judgment as to Count I of the SECOND amended complaint. This action arises out of the reduction in force (RIF) of salaried non-union employees in St. Louis implemented by MDC from May 2, 1991, through February 28, 1993. The Equal Employment Opportunity Commission (EEOC) filed this action on August 2, 1995, claiming that MDC violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 626(b), in implementing this RIF. Count I of the second amended complaint *1050 asserts that MDC engaged in a pattern or practice of discriminatory treatment of employees who were 55 or over at the time of their termination; Count II asserts a disparate impact claim as to persons in this age group.
The ADEA prohibits employer discrimination against any individual forty years of age and older with respect to terms, conditions or privileges of employment because of the individual's age. 29 U.S.C. §§ 623(a), 631. By order dated July 22, 1997, the Court granted MDC's motion to dismiss Count II of the amended complaint on the ground that a disparate impact claim is not cognizable under the ADEA on behalf of a subgroup of the statutorily protected class. In a previous order, dated November 14, 1996, the Court granted the EEOC's motion for separate trials on the issues of liability and damages as to Count I.
The legal framework for the EEOC's "pattern or practice" claim in Count I is that established by the Supreme Court in International Bhd. of Teamsters v. United States, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977).[1] Although that case was decided under Title VII of the Civil Rights Act of 1964, 42 U.S.C. sec.2000e-6(a), it is applicable to pattern or practice age discrimination claims brought under the ADEA as well. King v. General Elec. Co., 960 F.2d 617, 622 (7th Cir.1992); Sperling v. Hoffmann-La Roche, Inc., 924 F.Supp. 1346 (D.N.J.1996). In such a case, the EEOC must establish that the employer "regularly and purposefully" treated members of the protected group less favorably and that age discrimination was the employer's "standard operating procedure  the regular rather than the unusual practice." Teamsters, 431 U.S. at 334-35, 97 S.Ct. 1843.
In Cooper v. Federal Reserve Bank, 467 U.S. 867, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984), the Supreme Court emphasized the difference between an individual employment discrimination claim and a pattern-or-practice claim. The Court explained that evidence of sporadic cases of discrimination would not necessarily justify the additional inferences needed to maintain a pattern-or-practice claim, namely "(1) that this discriminatory treatment is typical of [the employer]'s ... practices, (2) that [the employer]'s practices are motivated by a policy of ... discrimination that pervades the [company], or (3) that this policy of ... discrimination is reflected in [the employer]'s other employment practices, such as hiring ...." Id. at 877, 104 S.Ct. 2794.
In the present action, the EEOC's specific allegations in Count I are that MDC formulated a plan to eliminate older employees from its workforce. Attached to the complaint is a list of 442 individuals who were 55 or older when terminated by MDC as part of the RIF in question. The EEOC alleges that each performed his/her duties in a competent manner, yet was terminated while younger, less qualified employees were retained. The EEOC alleges that MDC believed that younger employees were more valuable, and that MDC selected employees for termination based upon their attainment of age 55, which made them eligible for retirement benefits. As a result, employees 55 or older had an 18.2% chance of termination, compared with a 5.6% chance for those 54 or younger and a 4.9% chance for those 39 or younger.
The EEOC further alleges that MDC used its performance evaluation system as an instrument of age discrimination by rating employees age 55 and older lower than younger employees despite the older employees' superior or similar performance. Lastly the EEOC alleges that at least by May 1991, MDC knew that its RIF was tainted with age bias and discrimination and caused layoffs of disproportionate numbers of employees over 55, yet failed to implement affirmative steps to ensure that age was not a basis for layoff decisions.
*1051 Summary judgment is appropriate if the record shows that "there is no genuine issue of material fact and the nonmoving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court must view the evidence and all reasonable inferences that may be drawn therefrom in the light most favorable to the nonmoving party in determining whether a genuine issue for trial exists. Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 775 (8th Cir.1995). In response to a properly supported motion, the nonmoving party must set forth specific facts, by affidavit or otherwise, which demonstrates the existence of a genuine issue for trial. Fed.R.Civ.P. 56(e).
In a pattern-or-practice case, the plaintiff's initial burden is to establish a prima facie case by demonstrating that unlawful discrimination has been a regular procedure or policy followed by the employer. Teamsters, 431 U.S. at 360, 97 S.Ct. 1843. Typically what is required for a prima facie case is reliable statistical evidence, buttressed by evidence of general policies and specific instances of discrimination. See EEOC v. Chicago Miniature Lamp Works, 947 F.2d 292, 297 (7th Cir.1991). The burden of production then shifts to the employer to show that the challenged decisions were made for legitimate, nondiscriminatory reasons, or that the plaintiff's proof is inaccurate or insignificant. Teamsters, 431 U.S. at 360, 97 S.Ct. 1843. As in all disparate treatment cases, the burden of persuasion as to the ultimate issue of intentional discrimination remains with the plaintiff at all times. Thus the plaintiff can avoid summary judgment only if the evidence considered in its entirety creates a reasonable inference that age was a determinative factor in the challenged employment action. Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328, 1336-37 (8th Cir.1996) (individual age discrimination case).
Here the record establishes the following. Beginning in 1990, MDC was faced with a number of business circumstances that caused management to undertake major RIFs of its nonunion employees in St. Louis. At the time, MDC was organized into six major components; each component had several divisions, and each division had its own departments. There were a total of over 2,000 departments.[2] RIF Supervisory Guidelines dated July 1990, August 1992, and September 1992, provided that department heads (first-line supervisors) were to prepare RIF lists based upon their review of the future workload and an assessment of employee skills and abilities to do the remaining work. This assessment was to consider factors such as experience, versatility of skills, and work quality. The RIF lists were then submitted to the respective division head (usually a vice-president) for approval. Generally, an employee with enough years of service was entitled to retirement benefits at age 55.
From May 1, 1990, through May 1, 1991, approximately 4,500 non-union St. Louis employees were laid off. Based upon an investigation and statistical analysis, The EEOC concluded that of this group, a substantial portion of employees who were 55 and older had been selected for termination based on their age. In October 1992, when the likelihood of a lawsuit by the EEOC became apparent, the parties began settlement negotiations which resulted in a proposed consent decree filed with the court on January 11, 1995. On August 12, 1995, the Court[3] approved the consent decree. EEOC v. McDonnell Douglas Corp., 894 F.Supp. 1329 (E.D.Mo.1995). The decree required MDC to pay $10 million, plus $10.1 million in pension enhancements, to be distributed among a group of 948 claimants; provided for the employment of twenty claimants; and prohibited MDC from engaging in any employment practice in violation of the ADEA. The consent decree also set forth procedures that must be followed and documentation that must be prepared by MDC in the event of future RIFs. Id. at 1333.
The relevant time period for the instant suit begins on May 2, 1992, the day after that time period covered by the consent decree. On that day, MDC had 23,051 salaried non-union employees in St. Louis who were at *1052 risk of layoff. Of these, 3,389 (14.7%) were aged 55 or older, and 19,662 (85.3%) were under 55. 1,533 of the 23,051 employees were laid off. 464 (30.3%) of the laid off employees were 55 or older, and 1,069 (69.7%) were under 55. Thus 13.7% of the 3,389 employees 55 or older were laid off, and 5.4% of the 19,662 employees under 55 were laid off. (Report of Jack Kearns, expert in applied statistics employed by the EEOC  App. I to motion for summary judgment.)[4] As noted, considering just the effect of the RIF in question, before the RIF, those 55 or older comprised 14.7% of the relevant total. After the RIF, this age group comprised 13.6% of this total (new total of 21,518 [23,051 less 1,533] of whom 2,925 [3,389 less 464] were 55 or older).
In support of its motion for summary judgment, MDC has submitted the affidavits of several high-ranking employees in the human resources or labor relations departments of various MDC components. These affiants attest that the RIF in question was carried out in accordance with the process set forth in the Supervisory Guidelines. The affiants stress the diffuse and diverse nature of the decision-making, with each department head deciding what weight to give the relevant factors in assessing employee skills. (App. 1, 2, and 3 to motion for summary judgement). Vincent DeBlaze, MDC's Vice President for Human Resources during the relevant time period, testified by deposition that age was not considered as a factor in the RIF process. (App. 85 to EEOC's opposition to summary judgment). MDC argues that its diffuse and subjective decision-making process belies a pattern or practice of discrimination.
MDC's statistical expert Michael P. Ward attests that the percentage of the non-union salaried employees in St. Louis that were 55 or older was, in fact, higher in at the end of the relevant time period than it was at the beginning. (App. 5 to motion for summary judgment.)[5] This statement is not challenged by the EEOC.[6]
In support of its motion, MDC also submits copies of twenty court decisions favorable to MDC, and one adverse to MDC, in individual ADEA cases arising out of the RIF in question. (App. A-S to motion for summary judgment.)
In opposition to the motion for summary judgment, the EEOC argues that there are genuine issues of material fact as to who made the layoff decisions, what criteria were used, whether the EEOC's experts performed proper statistical analyses, whether there was an historical preference for youth at MDC, whether MDC decision-makers used age and retirement eligibility as factors in performance evaluations and/or layoffs, and whether MDC ignored complaints of age bias and failed to implement safeguards to prevent further age discrimination. (Brief in opposition to motion for summary judgment at 2-3.)
The EEOC further argues that its statistical evidence alone sufficiently establishes a pattern or practice of age discrimination to satisfy the prima facie standard. According to Kearns, the difference in layoff rates of employees older and younger than 55 "is highly statistically significant." (Kearns report at 6; Kearns dep. at 64.) After performing a logistical regression analyses which took into account performance evaluations, Kearns could not identify any variable other than age that might explain the statistical *1053 significance of the disparity in layoff rates. (Kearns dep. at 64.)
The EEOC also relies on the report of Thomas A. Mahoney, its expert in human resources management. According to this report, there existed a "cultural focus of youth" at MDC which permeated the RIF decisions. The report also opines that MDC's Human Resources function did not comply with the accepted role in large corporations of serving as a watchdog to ensure that work force decisions were not based on discrimination, and that performance appraisal processes at MDC used in RIF decisions were open to bias because they lacked standardization. (App. F to MDC's motion for summary judgment.)
Finally, the EEOC has submitted affidavits and excerpts of depositions of numerous former MDC employees who were laid off in the relevant time period when they were 55 or older, as well as excerpts of depositions of individuals in the decision-making chain. Many of these former employees assert that when they were laid off they were either told or they believed that they were chosen because they were eligible for retirement benefits, or because their salaries were too high. (E.g., App. 33, 36, 42 p. 59, 59, 62, 83 to EEOC's opposition to summary judgment; see also, e.g., App. 82 and 88 linking eligibility for full retirement and layoff; and App. 56 quoting a staff memo that employees close to retirement eligibility would not be laid off). One supervisor testified that an employee's high income was considered in lay-off decisions (App. 42 p. 16)
The EEOC argues that its statistical and anecdotal evidence must be viewed in context of MDC's alleged historical preference for youth as evidenced by management statements from the mid 1980s, primarily a document entitled "Five Keys in Perspective," authored by John McDonnell, then president of MDC. This 18-page document calls for a new approach to corporate organization in order to increase competitiveness: abandoning the hierarchial model for the Japanese model of putting more authority into the hands of each employee. (App. 7 to MDC's reply in support of motion for summary judgment.) One reason given for adopting the new culture was to enable MDC to "hire and retain the best young people." The EEOC argues that Eighth Circuit cases holding that the "Five Keys" was not probative of age discrimination by MDC in an individual case, are not applicable to this pattern-or-practice case.
Upon review of the entire record, the Court concludes that the EEOC's evidence is not sufficient to establish a prima facie case that age discrimination was MDC's "standard operation procedure" in implementing the RIF in question. In Teamsters, 431 U.S. at 340, 97 S.Ct. 1843, the Supreme Court held that statistics which "reached proportions comparable to those" in that case could establish a prima facie case of discrimination. The Court, however, cautioned that the "usefulness of statistics depends on all the surrounding facts and evidence." Id. at 339, 97 S.Ct. 1843; see also Raskin v. Wyatt Co., 125 F.3d 55, 67-68 (2nd Cir.1997) (affirming summary judgment in ADEA failure-to-promote and constructive-discharge case; expressly declining to rely on expert's statistical report that starting at age 55, termination rate increased ten-fold) (citing cases).
Here the EEOC's statistical evidence falls short of the statistical evidence presented in Teamsters which established that the defendant, a national common carrier, failed to hire minorities for the more-desirable line-driver position. Of the 1,828 line drivers, 13 were minorities, and until two years before the suit was filed, there were none. Id. at 437-38.
This Court concludes, as have numerous other Courts, that in an age discrimination case in the context of a bona fide RIF, the most significant statistic is the difference in the percentage of older employees before and after the RIF. See e.g., Rose v. Wells Fargo & Co., 902 F.2d 1417, 1423 & n. 5 (9th Cir.1990); Holley v. Sanyo Mfg., Inc., 771 F.2d 1161, 1167 (8th Cir.1985) ("The crucial statistical question ... must focus on the effect of the reduction-in-force;" no statistical basis for age discrimination claim where percentage of employees in protected class before layoffs was 25.8% and 26.0% after layoffs). Here the evidence establishes that there was an insignificant difference between the percentage of employees over 55 before and after the RIF in question, i.e., 14.7% *1054 before and 13.6% after the RIF, as previously stated.
With regard to the "Five Keys" document, the Court agrees with the EEOC that standards annunciated in individual disparate treatment cases may not always be applicable to pattern-or-practice cases. Thus the holdings in individual ADEA cases against MDC that there was no causal link between the "Five Keys" and the particular layoff in question, see e.g., Hutson, 63 F.3d at 779, are not dispositive on the relevance of the document in this pattern-or-practice case. The Court, however concludes that the "Five Keys" document is too remote in time from the RIF in question to be probative in this case. Furthermore, the Court is doubtful that a reasonable jury could conclude that this document, read as a whole, indicates a pervasive age bias at MDC which affected the layoff choices in the RIF in question. Cf. Allard v. Indiana Bell Tel. Co., 1 F.Supp.2d 898, 912 (S.D.Ind.1998) (pattern-or-practice ADEA case; reasonable jury could not infer corporate culture of age bias from statement by defendant's president made several months before RIF that there should be continual influx of "new young crazy people" to keep business from "drying up," given context of statement and remoteness in time).
Another comment relied upon by the EEOC to show an age-bias environment at MDC is the suggestion in a human resources memo from September 1987 that there be regular seminars for "young change agents." (App. 14, Exh.6, p. 2, 4th line from bottom, to EEOC's opposition to summary judgment). This "stray comment" similarly does not create a genuine issue of material fact.
MDC's argues that the subgroup of 55 and older is an arbitrary one and thus defeats the EEOC's pattern-or-practice claim. According to the EEOC's anecdotal evidence, however, age 55 was significant in many layoff decisions because it was generally the age of eligibility for retirement benefits. Thus the subgroup is not an arbitrary one. To a large extent, however, it is this very significance of age 55 that defeats EEOC's prima facie case.
As noted above, some of the former employees testified that they were told they were chosen for the RIF because they could collect retirement benefits, while others testified they believed they were chosen to prevent them from attaining such benefits. Neither motivation is indicative of the kind of inaccurate and stigmatizing age-based stereotypes prohibited by the ADEA. In Hazen Paper v. Biggins, 507 U.S. 604, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993), the Supreme Court held that "an employer does not violate the ADEA just by interfering with an older employee's pension benefits that would have vested by virtue of the employee's years of service." Id. at 613, 113 S.Ct. 1701. The reasoning underlying this holding was that:
[i]t is the very essence of age discrimination for an older employee to be fired because the employer believes that productivity and competence decline with old age ... Congress' promulgation of the ADEA was prompted by its concern that older workers were being deprived of employment on the basis of inaccurate and stigmatizing stereotypes.
Id. at 610, 113 S.Ct. 1701. Thus, basing termination decisions during a RIF on employees' pension rights does not violate the ADEA, whether the motivation is to interfere with such rights or to minimize the adverse affect a layoff might have on an employee. See Dilla v. West, 4 F.Supp.2d 1130, 76 Fair Empl.Prac.Cas. (BNA) 1414 (M.D.Ala.1998); Geiger v. AT & T Corp., 962 F.Supp. 637, 643-44 (E.D.Pa.1997); Sperling, 924 F.Supp. at 1389-90.
Similarly, laying off employees because their salaries are high is not prohibited by the ADEA, even though this factor correlates with age. Hanebrink v. Brown Shoe Co., 110 F.3d 644, 647 (8th Cir.1997); Bialas v. Greyhound Lines, Inc. 59 F.3d 759, 763 (8th Cir.1995) (in individual age discrimination case, evidence that employer terminated individuals during RIF based on their status as higher-paid employees does not support inference of age discrimination).
The Court also concludes that the decentralized and subjective nature of the decision making process undermines the claim that age discrimination was MDC's "standard operating procedure." As stated in Sperling, 924 F.Supp. at 1363, "a decision by a company to give managers the discretion *1055 to make employment decisions, and the subsequent exercise of that discretion by some managers in a discriminatory manner, is not tantamount to a systematic company-wide policy of intentional discrimination." See also, Allard, 1 F.Supp.2d at 999-920; Wilkerson v. Martin Marietta Corp., 171 F.R.D. 273, 286 (D.Co.1997) (citing Sperling for this proposition in approving a consent decree in pattern-or-practice age discriminatory treatment case brought by EEOC).
Lastly, upon review of the record, the Court concludes that there is insufficient evidence from which a reasonable jury could infer that MDC's performance evaluation system was intentionally manipulated to evaluate employees 55 or older lower than comparable younger employees so that these evaluations could then be used to justify a policy of laying off the older employees during the RIF. Cf. EEOC v. Kloster Cruise Ltd., 897 F.Supp. 1422, 1429-30 (S.D.Fla. 1995) (in disparate treatment pattern-or-practice age discrimination RIF case, EEOC failed to raise triable issue of fact as to whether performance appraisals of older employees were rigged to set them up for later termination). The EEOC's evidence on this issue suggests, at the most, sporadic instances where age may have been a factor in a performance evaluation or lay-off decision.
There is no dispute that the RIF in question was necessitated by business realities. "[T]he employment discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom and fairness of the business judgment made by employers except to the extent that those judgments involve intentional discrimination." Herrero v. St. Louis Univ. Hosp., 109 F.3d 481, 485 (8th Cir.1997); Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 781 (8th Cir.1995). In sum, the Court is satisfied that based upon the evidence in the record, no reasonable jury could find that MDC engaged in a pattern or practice of age discrimination in implementing the legitimate RIF.[7]
Accordingly,
IT IS HEREBY ORDERED THAT defendant McDonnell Douglas Corp.'s motion for summary judgment is granted.
IT IS FURTHER ORDERED THAT all other pending motions are denied as moot.
NOTES
[1] The statutory basis for "pattern-or-practice" claims is found in sec. 707(a) of Title VII which provides in relevant part, that

[w]henever the Attorney General has reasonable cause to believe that any person ... is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights secured by [Title VII] and that the pattern or practice is of such a nature and is intended to deny the full exercise of [these] rights, the Attorney General may bring a civil action ...requesting such relief ... as he [or she] deems necessary to ensure the full enjoyment of the rights ...
[2] In the summer of 1992, the components were consolidated into two organizations known as McDonnell Douglas Aerospace-East and -West, resulting in more layoffs.
[3] The Honorable Carol E. Jackson, United States District Judge.
[4] These numbers are slightly different according to MDC which asserts that at the beginning of the relevant time period MDC had 21,378 at-risk employees of whom 2,260 (10.6%) were 55 and older, and 19,118 (89.4%) were younger. 1,470 employees were laid off, with 450 (30.6%) employees 55 or older, and 1,020 (69.4%) under 55. (MDC's brief in support of motion for summary judgment at p. 1050, and affidavit of MDC's expert Michael P. Ward, App. 5 to motion for summary judgment). Based on these numbers, 19.9% of those 55 or older were laid off, while 5.3% of those younger were laid off. In considering the motion for summary judgment, this Court must accept the EEOC's version of the facts. The differences in MDC's and the EEOC's numbers are of little significance.
[5] The Court assumes that this takes into account new hires and/or employees reaching the age of 55 during the relevant time period.
[6] Much of Ward's methodology in reaching other conclusions is attacked by the EEOC's statistical expert, Burt S. Barnow, in his report in rebuttal to Ward's report. (App. 3 to EEOC's opposition to motion for summary judgment.) The Court's conclusions of law are not based on these aspects of Ward's report.
[7] The EEOC has framed its allegations in Count I to parallel the burden-shifting method of proof set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and used in individual employment-discrimination cases where there is no direct evidence of intentional discrimination. Under this method of proof, the plaintiff in RIF case creates an inference of intentional age discrimination by establishing a prima facie case, the elements of which are that the plaintiff is within the protected age group; that he met applicable job qualifications; that he was discharged; and "some additional showing" that age was a factor in the termination. Holley v. Sanyo, 771 F.2d 1161, 1166 (8th Cir.1985). The burden then shifts to the defendant to produce evidence that the termination was for a legitimate nondiscriminatory reason. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted and drops out of the case. The plaintiff retains at all times the burden of persuading the trier of fact that the adverse employment action was motivated by intentional discrimination. Thus, the plaintiff can avoid summary judgment "only if the evidence considered in its entirety (1) creates a fact issue as to whether the employer's proffered reasons are pretextual and (2) creates a reasonable inference that age was a determinative factor in the adverse employment decision." Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328, 1336-37 (8th Cir.1996).

The Court does not believe that this analytic framework is helpful in a pattern-or-practice case. To the extent that it is, the Court's conclusions above could be restated as concluding that the EEOC has not satisfied the "additional showing" element of a prima facie case. Even assuming that it had, the EEOC has not created a fact issue as to whether MDC's proffered reason for the terminations, namely, the RIF and reorganization necessitated by economic realities, was pretextual, or that MDC's method of choosing the candidates for the RIF was a pretext for discriminating against employees 55 or older based on their age. The evidence considered in its entirety does not create a genuine issue of fact as to whether MDC intentionally discriminated against employees 55 or older based on their age as prohibited by the ADEA.